Staunton.

NATIONAL VALLEY BANK OF STAUNTON V. HARMAN ET ALS.

Absent, *Moncure*, P.

A vendor of real estate reserved in the deed of conveyance a lien for the purchase money to be paid in five years, and a negotiable note was made by the vendee for the amount also payable in five years, but the note was not referred to in the deed. Shortly afterwards the vendor endorsed and transferred the note to a bank in discharge of an antecedent debt. After the note had been so transferred, the same vendor contracted to sell the same property to a third party, who paid the purchase money and thereupon took from the first vendee a conveyance of the property. The second vendee was wholly ignorant of the existence of the outstanding negotiable note and of any claim on the part of the bank to the purchase money. HELD: That the second vendee took the property unaffected by any lien in favor of the holder of the note.

This was an appeal from the circuit court of Augusta county. The facts and proceedings are sufficiently stated in the opinion of *Staples*, J.

*George M. Cochran, Jr.*, for the appellant.

*Thomas C. Elder*, for the appellee.

STAPLES, J. The question presented for our determination in this case lies within a very narrow compass. It is one of the first impression in this State, there being no express adjudication of the point by this court.

It appears that Michael G. Harman, on the 22d of February, 1876, sold and conveyed to his son, Asher W. Har-

man, a house and lot near Staunton for the sum of two thousand dollars, to be paid five years after date with interest from date, to secure which a lien was reserved on the face of the deed. Although the deed makes no mention of the fact, Asher W. Harman executed his negotiable note for the purchase money, which was also payable five years after date, with the interest payable semi-annually.

Shortly after this, Michael G. Harman endorsed and transferred the note to the National Valley Bank of Staunton in discharge of an antecedent indebtedness. There is no doubt but that the bank acquired the note in good faith, relying upon the security of the vendor's lien.

On the 22d of March, 1876, and after the transfer of the note to the bank, Michael G. Harman entered into a contract for the sale of the same house and lot to Mrs. Kate O'Toole at the price of $2,000, and he covenanted at the same time to make, or cause to be made to her, a deed with general warranty. The purchase money was paid by Mrs. O'Toole, and thereupon a conveyance of the property was made to her by Asher W. Harman. At the time of this purchase Mrs. O'Toole was wholly ignorant of the existence of the negotiable note or of any claim on the part of the bank to the purchase money. There is no doubt that she is a *bona fide* purchaser of the property for valuable consideration.

The question is, Who has the better right, Mrs. O'Toole or the bank? The claim of the latter is that the endorsement and transfer of the negotiable note operated as a transfer and assignment of the vendor's lien; that this assignment being prior in date to the conveyance to Mrs. O'Toole, she holds the property subject to the lien in the hands of the bank. To enforce that lien is the object of the bill in this case.

The learned counsel for the appellant has very properly said, that in case of a mortgage upon real estate, an assign-

ment of the debt is an assignment of the mortgage, without any formal assignment, transfer, or even mention of the mortgage itself.

The mortgage is a mere security for the debt, and cannot exist without it. And where the mortgage is given to secure a negotiable note, it has been held in a number of cases that the *bona fide* holder of the note takes the mortgage as he takes the note, unaffected by any equities between the mortgagor and mortgagee subsequent to the transfer of the note.

This doctrine has been denied by many respectable authorities, which hold that the personal obligation of the debtor is one thing, and the lien or security of the mortgage another and a different thing; that whilst the negotiable note, upon principles of commercial law, may not be subject to equities in the hands of a *bona fide* holder— the mortgage lien is a mere chose in action, which can only be enforced in equity, and the assignee takes it as he would any other chose in action, and is bound by all the rules applicable to that class of securities.

Without expressing any opinion upon this controverted point, it may be sufficient to say that the assignee of the vendor's lien does not stand in every respect upon the same ground with the assignee of the mortgage debt. The latter, after forfeiture, may sue at law, recover the premises and hold possession until his debt is satisfied out of the rents and profits, and I take it a court of equity would not, at the instance of the mortgagor, deprive him of this legal advantage. In the instance, however, of the sale and conveyance of property, the purchaser, in the case supposed, stands as the legal and equitable owner of the property, subject only to the lien for the purchase money. That lien is only recognized in the equity courts, and the rights of the vendor or his assignee can only be enforced in these courts; and it is by no means certain that the purchaser would be deprived

of his equitable defence against the assignee, even when the latter is the holder of the purchaser's negotiable note for the unpaid purchase money. Here the question is not between the assignee of the note on the one hand, and a mortgagor or purchaser who may have cut off his defence by the form of his security on the other, but between the assignee or holder of the note and a third person who has purchased the property and obtained a conveyance of the legal title in entire ignorance of the note and the assignment. If the deed from M. G. Harman to Asher W. Harman had mentioned the existence of a negotiable note, it might have become the duty of Mrs. O'Toole, before purchasing, to call for its production; the failure of the parties to produce it might justly have led to a strong suspicion that the note had passed out of the possession of Michael G. Harman into the hands of a third party. Mrs. O'Toole having constructive notice of the lien, would have the like notice of the negotiable note, and she would not be allowed to close her eyes to the facts thus communicated. But it will be observed that the deed makes no reference to any note, or to any personal obligation of the debtor whatever. The most prudent and cautious inquirer would not have supposed that any such instrument existed. Certainly it cannot be said that persons were bound at their peril to suspect or presume it. Indeed, a negotiable note payable five years after date, is altogether so unusual that no one, even the most diligent, would have ever imagined that such a security formed a part of this transaction. I repeat, therefore, that upon the record Asher W. Harman appeared as the owner of the land, subject only to the lien for the purchase money, and upon the record M. G. Harman appeared as the owner of the lien itself, without a circumstance of suspicion to put third persons upon inquiry. A deed from the former, with a relinquishment of the lien by the latter, would convey a perfect title according to every reasonable presumption and intendment.

It has been said, however, that Mrs. O'Toole ought to have made inquiry. There was no person to whom she could have applied for information touching the lien, unless it was Michael G. Harman. But why apply to him, when the transaction itself in which he was engaged was the strongest possible affirmation that he was entitled to the purchase money. The rule is, that a purchaser will not be charged with notice by being put on inquiry, unless he has some more authentic means of information than can be found in an application to one who is interested in concealing the truth.

In 2 Leading Cases in Equity, page 49–50, it is said : It cannot be required of a purchaser to inquire of the vendor, or of any one who joins him in making title, whether he is committing a fraud or breach of trust by disposing of that which belongs to a third person, or has been already sold.

One who is engaged in a fraudulent design seldom hesitates at a falsehood. The law exacts nothing vain or useless. To make inquiry a duty, the circumstances must be such as will lead to knowledge. 2 Lead. Cases in Eq. Part 1, page 50.

A party will not be considered as having notice unless the circumstances are such that the courts can say, not only that he could have acquired, but that he ought to have acquired the notice but for his gross negligence in the conduct of the transaction in question. See also *McClanachan* v. *Siter, Price & Co.*, 2 Gratt. 313. According to these principles, Mrs. O'Toole cannot be charged with notice, actual or constructive. We cannot attribute to her either bad faith or negligence. In short, she is a purchaser for valuable consideration, without notice. Against such a purchaser, courts of equity will not take the least step imaginable, and will, on the other hand, allow him to take every advantage which the law gives him, for there is nothing which can attach itself

upon his conscience in such a case in favor of an adverse claim.

In *Jerrard* v. *Saunders*, 2 Vesey, Jr. 453, 458, Lord Rosslyn said: "I think it has been decided, that against a purchaser for valuable consideration without notice, this court will not take the least step imaginable. You cannot even have a bill to perpetuate testimony against him. I am pretty sure it is determined that no advantage the law gives him will be taken from him by this court. The doctrine as to the jurisdiction of this court is this: You cannot attach upon the conscience of the party any demand whatever where he stands as a purchaser, having paid his money and denies all notice of the circumstances set up in the bill." This doctrine has been repeatedly sanctioned by this court and the supreme court of the United States. *Boone* v. *Chiles*, 10 Peters, 177, 211; *Carter* v. *Allen et al.*, 21 Gratt. 241, 247; *Tompkins* v. *Powell*, 6 Leigh, 576.

Indeed, the principle has been carried by great judges to the extent of holding that the plea of a purchaser for valuable consideration without notice, is good against one asserting a legal title to the property. Said Lord Chancellor Sugden, in *Joyce* v. *De Meleyns*, 2 J. & L. 374: "I apprehend that the defence of a purchaser for value without notice is a shield as well against a legal as an equitable title." The same opinion was expressed by Lord Eldon, in *Walwyn* v. *Lee*, 9 Vesey, 24; by Lord Rosslyn, in *Jerrard* v. *Saunders*, 2 Vesey, Jr. 454; and in Story's Equity Jurisprudence, §§ 630, 631, notes, and cases their cited.

The only recognized exception to this rule is that of a widow suing for dower. This exception, which is of a very special nature, has been placed upon the ground that dower is highly favored in equity; that it is not only a natural, but a legal right, which may be enforced at law, and that the dowress, in proceeding upon the concurrent jurisdiction of the court of chancery, merely enforces a

right which the defendant could not at law resist by a plea of purchase for valuable consideration without notice. The propriety of this exception in favor of the widow's claims has been questioned by great judges and denied by others, who hold that a purchase for value without notice is entitled to protection against all adverse claims. 1 Story Eq. Ju., § 631; 2 Leading Cases in Equity, notes to *Basset* v. *Nosworthy*. It is unnecessary to express any opinion upon these vexed and much controverted questions. The citations are given for the purpose of showing the extended operation and influence of the rule in favor of a defendant who is before the court as a purchaser for valuable consideration without notice. In this case the bank does not claim to be the purchaser of the property in question, or to have any title to the same, legal or equitable, but to be the owner of a lien by assignment, the existence of which was wholly unknown to Mrs. O'Toole. If it be conceded that the bank has not merely equitable but a legal right to enforce the lien, it is not a legal right to the property, but *to the debt.* As was said by Judge Cabell, in *Moore* v. *Holcombe,* 3 Leigh, 605 : "The legal advantage of which the cases speak is some advantage as to the land, but the only legal advantage which the assignment of the bonds given to Murrell and Meem was a legal title to the bonds, and the right to sue at law in their own names. As to the land, the assisgment gave them no legal advantage whatever; as to the land, their claim was purely equitable. True, they might have sued at law on the bonds, but that did not strengthen their claim to the lands."

It only remains to notice an inquiry made by the learned counsel for the appellant. He has asked, How could the bank protect itself in taking an assignment of this debt? How could any assignee of a mortgage debt ever be safe in relying upon the security of the lien? As both the title and the lien in this case appeared upon the record, I do not

think any person could be safe in taking an assignment of the latter. The form and character of the transaction were such as placed it in the power of M. G. Harman, with the concurrence of Asher W. Harman, to defraud the bank and to convey a good title to an innocent purchaser. As a matter of precaution, the bank might have endorsed the assignment and transfer of the debt on the registration of the deed.

I do not mean to say that such an endorsement would constitute even constructive notice. With it, it is more than probable that Mrs. O'Toole would not have been involved in the purchase.

At all events, the bank ought not to have dealt with such a security, unless it could have been placed in such a shape as would protect it as assignee, without injury to persons who might deal with the property without notice of any defect in the title. Upon such persons it cannot visit the consequences of its misplaced confidence. Nothing, in my judgment, could tend more to destroy confidence in titles, or more to impede the free transmission of property than the successful assertion of secret encumbrances of this sort by strangers to the record.

For if Mrs. O'Toole is not protected, neither would be any number of purchasers deriving title from her. The lien will follow the estate wherever the latter may go.

In conclusion, it is proper to say there are a number of citations in Jones on Mortgages which support the title of one who *bona fide* purchased mortgaged property, against the claim of the assignor; but having here no access to the books, I have omitted to mention them. §§ 838, 820.

Upon the whole case, I am for affirming the decree of the circuit court.

Since the foregoing opinion was written, I have seen the case of *Torrey* v. *Deavitt*, decided by supreme court of Vermont, reported by the *Reporter*, October 19th, 1881, p.

508.    That case fully sustains the views presented in this. See also *Bank of the State of Indiana* v. *Anderson*, 14 Iowa, 544, and cases cited on behalf of counsel; United States Digest, vol. 2, 1880, p. 582.

CHRISTIAN, ANDERSON, and BURKS, J's, concurred in the opinion of *Staples*, J.

DECREE AFFIRMED.