# CHARLESTON.

TURK *v.* SKILES *et al.*

Submitted January 25, 1898—Decided April 20, 1898.

1. VENDOR'S LIEN—*Discharge—Deed of Trust—Construction.*

The holder of a vendor's lien joins with the owner of the land charged with such lien in a deed of trust granting the land by the words, "grant, bargain, sell, and confirm," to a trustee in trust to secure a debt to a third party, and to pay the balance of proceeds of sale under it to the owner of the land owing the vendor's lien. Such deed of trust will discharge the vendor's lien as to both the debt secured by the deed of trust and the owner of the land. Such deed of trust is as to the owner of the land a grant, and as to the holder of the lien a confirmation. (p. 83).

2. VENDOR'S LIEN—*Deed of Trust—Construction.*

Such deed of trust, containing no words of limitation, operates, under section 8, chapter 71, Code, and section 1, chapter 72, *Id.*, to pass the whole estate or interest of the grantors in the land, including such lien, for the purposes specified in the deed of trust. (p. 84).

3. CHOSE IN ACTION—*Assignment.*

The first assignee of a chose in action has preference. (p. 85).

4. MERGER.

Where a greater and less estate unite in the same person, without intermediate estate, the less at once merges into the greater. (p. 88).

5. PURCHASER FOR VALUE.

A purchaser for value without notice, having obtained a conveyance, will not be affected by a latent equity by lien, incumbrance, trust, fraud or other claim. (p. 87).

Appeal from Circuit Court, Pocahontas County.
Action by R. S. Turk, trustee, against Jennie B. Skiles

and others.   Defendants had judgment, and plaintiff Turk and defendant Tyree appeal.

*Affirmed.*

R. S. TURK, in proper person.

H. S. RUCKER, and FRANK WOODS, for appellees.

BRANNON, PRESIDENT:

This case was once before in this Court.   38 W. Va., 404, (18 S. E. 561).   As there appears, Apperson conveyed land to Skiles, reserving a lien for deferred purchase money, for which Skiles made her bonds to Apperson, not mentioned in the deed.   Afterwards, August 25, 1886, Mrs. Skiles and her husband and Apperson executed a trust deed to a trustee to secure a debt to Baldwin, recorded September 8, 1886.   On September 7, 1886, Apperson assigned said bonds to Turk.   Turk brought a chancery suit to enforce the lien to pay said bonds.   A decree of sale was rendered, and sale made under it to Tyree, which decree was reversed and the sale set aside by this Court.   Before the trustee or creditor under said deed of trust had been made parties, a sale was made under it, and the land conveyed to Durbin.   The plaintiff filed an amended bill, making the trustee and creditor under said trust deed and Durbin parties, and the result was a decree holding that Turk had no lien, and dismissing his bill and Turk and Tyree appeal.

Has Turk a lien on which a suit to sell the land can rest? Apperson joined in the deed of trust to Baldwin.   His only interest was the lien.   He meant his deed to have some effect.   It could pass nothing as to him but the lien, and thus subordinate his right to the purpose or trust declared in the deed.   He joined in the deed only to release his lien.   Can he set up the lien against that deed, in the teeth of his deed?   He had an interest not technically in the land, but an incumbrance or debt to come out of it, and, granting the land, did he not grant that lien? · An estoppel arises out of the contract, treated simply as such. Bigelow, Estop. 422.   At common law a grant was used to pass incorporeal rights or estates, and it passed just what the grantor at the time had, and all of it, not that

afterwards acquired, unless it had a clause of warranty. Statute law having made it applicable to corporeal property, it has now *per se*, without warranty, force to pass such title or right as the grantor at the time has in the land. *Western Min. & Mfg. Co.* v. *Peytona Cannel Coal Co.*, 8 W. Va., 411; 4 Kent, Comm., 490; 2 Lomax, Dig., 82. Code, chapter 72, gives to the form of deed found in section 1 capacity to pass "the grantor's whole interest" in the thing granted. The operative word in it is "grant." The deed here involved is, it is true, not one of absolute grant, but of trust; but it is an absolute grant in trust, and has the same operative word "grant," and I do not see why it should not as well pass the grantor's whole interest, for the purposes of the trust; and section 8, chapter 71, Code, provides that "where any real estate is conveyed, devised or granted to any person without any words of limitation, such devise, conveyance or grant shall be construed to pass the fee simple, or the whole estate or interest which the testator or grantor had power to dispose of in such real estate, unless a contrary intention shall appear." There is no warranty in this deed; but that is immaterial, as the deed passes all the interest the grantors had in the subject. A quitclaim deed from mortgagee to mortgagor discharges the mortgage. 1 Jones, Mortg. § 859. Why will not such a deed to a second mortgagee do so? A deed is taken most strongly against the grantor.

There is another view adding force to the contention that the lien passed to the trustee. By the deed of trust the granting parties, including Apperson, "do grant, bargain, sell and confirm" unto the trustee the land. Here is the word "confirm." It has a legal force under the law of conveyances. "A confirmation is of a nature similar to a release. Lord Coke defines it to be: 'A conveyance of an estate or right *in esse*, whereby a voidable estate is made sure and unavoidable, or a particular estate increased.'" 2 Lomax, Dig., 101; 2 Tuck. Comm., 253. To make sure a voidable estate is the proper office of confirmation. 2 Minor, Inst., 717. Apply this law to this case. Mrs. Skiles owns the land, but subject to Apperson's lien, which lessens and endangers her ownership

and the security which a deed of trust from her alone would confer; but Apperson joins in such deed of trust, saying that he will confirm the land to the trustee to answer the purposes of the trust.   Does he not thereby confirm the security of the deed of trust against his lien, and does he not make a voidable estate sure and unavoidable as against that lien?   Parsons, in his second volume on Contracts (page 504), pointedly answers in the affirmative by stating as the law that, "if a mortgagor and mortgagee, join, it is the grant of the mortgagee, and the confirmation of the mortgagor."   Mrs. Skiles is the mortgagor, and Apperson the mortgagee, under this rule.   So, in effect, they are treated by the courts.   *Hull's Adm'r* v. *Hull's Heirs*, 35 W. Va., 165, (13 S. E. 49); *Armentrout's Ex'rs* v. *Gibbons*, 30 Grat., 632; *Coles* v. *Withers*, 33 Grat., 194.

The deed retaining the vendor's lien mentioned no bonds for it, and the beneficiary under the trust deed is a purchaser for value without notice of the bonds.   *Bank* v. *Harman*, 75 Va., 604.   I hardly think, however, that view important, for at the date of the trust Apperson yet owned the notes.   Here are purchasers for value,—Baldwin, creditor, and Baldwin trustee.   They have the first assignment in time.   I have always understood that it was a bed-rock principle of equity that it would not disturb a purchaser for valuable consideration without notice, though he be junior to the adverse claimant; but here the proposition is to take from such a purchaser who is prior in time.   How can this be done?   The well-considered case of *Bank* v. *Harman*, 75 Va., 604, is decisive authority on this principle in favor of Baldwin, though Baldwin has a stronger case than had O'Toole in that case, because here Baldwin is first in time.   In that case Harman, Sr., sold to Harman, Jr., a house and lot, making a deed and reserving a lien for purchase money, but not mentioning the existence of any note for it, just as in this case.   Harman, Sr., took a note for the purchase money, and transferred it to the bank.   Then Harman, Sr., made a contract selling the house to O'Toole, and Harman, Jr., made O'Toole a deed.   The question was whether the bank, as assignee of the note, could enforce the lien; whether, as

Harman, Sr., the person in whose favor the deed retained the lien (like Apperson here), having made the contract selling the lot to O'Toole, all his right did not pass to O'Toole shutting out the bank, occupying the shoes of Turk in this case, though Harman, Sr., did not sign the deed to O'Toole, whereas here Apperson joined in this deed of trust; making it stronger in favor of Baldwin in this case. The court held O'Toole protected from the note and lien. O'Toole did not know of the assignment of the note to the bank. The deed reserving the lien did not mention it. If it had there might be some pretense to say that she ought to have inquired. I ask here, where is the evidence that Baldwin knew a thing of these bonds assigned to Turk? The deed did not hint of their existence. But suppose the deed had spoken of them. They were yet owned by Apperson when he made the trust. He had not yet assigned them to Turk. In the case cited it is said: "I think it has been decided that against a purchaser for valuable consideration without notice this court will not take the least step imaginable. * * * I am pretty sure it is determined that no advantage the law gives him will be taken from him." Here it is proposed to take from Baldwin the advantage even the law gives him,—priority in time of assignment. But, even if he were later than Turk in time, you could not charge his lot with the bond lien, under the case above cited. But Baldwin is an earlier purchaser than Turk. Equity and law both say that he who is prior in time is prior in right.

It will not do to say that the lien cannot be assigned without actual delivery of the notes. A separate instrument may assign a debt and its lien. *Spring* v. *Insurance Co.*, 8 Wheat., 268; 2 Am. & Eng. Enc. Law, 1056. The lien is one thing,—a charge on the land; the note another,— a mere evidence of personal demand. *Bowie* v. *Poor School Soc.*, 75 Va., 300, 303. True, when bonds are assigned they carry the lien; but if, before they are assigned, a separate paper has operated to assign the debt and lien, it is ineffectual. This deed did not hint at any bonds for purchase money. 2 Jones, Liens, § 1121, says: "If the deed which retains a lien for purchase money does not refer to any note or bond for such purchase money, a sub-

sequent purchaser is not bound to make inquiry for it, and is not affected by any equity in favor of the assignee of the note or bond. * * * The assignee of the note in such case does not stand upon the same ground with the assignee of a mortgage note, where the latter is described in the mortgage. The giving of a note for the purchase money, secured by a vendor's lien, is not so universal a practice as to make it incumbent upon a subpurchaser, in the absence of any reference to the note in the deed, to make inquiry for such a note. And so, where a note given in consideration of a contract for the conveyance of land was transferred to a third person, and the contract was afterwards canceled by the parties to it, and the land conveyed to others, it was held that the holder of the note had no lien upon the property." Turk's equity, besides being later, is a latent one, and the creditor under the trust a purchaser for value, and "a purchaser for value, without notice, having obtained a conveyance, will not be affected by a latent equity, by lien or encumbrance, or trust or fraud, or any other claim." *Carter* v. *Allan*, 21 Grat., 241; Bart. Ch. Prac., 1008.

The fact that the trust deed was not recorded until after the assignment of the bonds to Turk is irrelevant. A transfer or discharge of a lien for purchase money need not be recorded to bind a subsequent assignee, it being good·as to him though he have no notice of the transfer or discharge, however necessary notice to the debtor may· be. *Tingle* v. *Fisher*, 20 W. Va., 498; *Fleshman* v. *Hoylman*, 27 W. Va., 728. If we view the instrument ·as a deed of trust, conveying, not only the land, but the debt or chose, it need not as to the chose be recorded to bind subsequent purchasers or assignees of the chose; for the words "goods and chattels" in section 5, chapter 74, Code, requiring deeds of trust of goods and chattels to be recorded, does not apply to choses in action, but only to visible, tangible, movable personal property. Cases just cited. And the trustee under the trust might have the lien, and Turk the bonds, their personal obligation, as they are for certain purposes separate. The trustee and creditor under the deed of trust are purchasers for value. *Weinberg* v. *Rempe*, 15 W. Va., 831; *Duncan* v. *Custard*, 24 ·

W. Va., 731. They are, under said deed, assignees of the lien first in time over Turk, and take preference over him, and gave first notice of assignment to debtor, and before Turk's assignment; but notice is not at all material. *Tingle* v. *Fisher*, 20 W. Va., 498. Thus, I think Baldwin has preference over Turk's vendor's lien.

Next comes the queston, has Turk a vendor's lien as against Mrs. Skiles? I think not, because the deed of trust conveys the land upon three trusts specified in it, namely: (1) Out of the proceeds of sale in default of payment to pay costs of executing the trust; (2) to pay Baldwin's debt; (3) to pay the balance to Mrs. Skiles,—this third purpose of trust operating to discharge the lien as to Mrs. Skiles whether under the doctrine of release, merger, or estoppel a court of equity, in its desire to execute the intent, will not be particular in saying. Apperson had a money demand charged on the land. His deed, importing by its seal consideration, directs that money to go to Mrs. Skiles. Can he or his assignee claim it against that deed? And here is a union in one person, Mrs. Skiles, of the land and the charge. Is not this a merger of the debt? "All inferior estates are derived out of the fee simple, so that whenever a particular estate, or limited interest in land, vests in the person who has the fee simple in land, such particular estate or interest is immediately drowned or merged in it, upon the principle that *omne majus con-tinet in se minus.* Where a sum of money is charged on real estate, which comes to the person entitled to the money in fee, the charge is merged." 1 Lomax, Dig., 13. The same result follows where the right to money charged on the land comes to the owner in fee of the land. A quitclaim deed from mortgagee to mortgagor releases the debt. 1 Jones, Mortg. § 972. "The strict rule of law is that, when the ownership of the mortgage debt and title to the land become vested in the same person, the mortgage is thereby merged and extinguished." "The union of title to property, and the ownership of a judgment which is a specific lien on the particular property, in the same person, will merge and extinguish the judgment." 15 Am. & Eng. Enc. Law, 321, 334. "When a greater and less estate meet in the same person, without intermediate

estate, the less at once merges in the greater." *James*
v. *Morey*, 14 Am. Dec., 475.  Conveyance by mortgagee is
an assignment of the mortgage, and passes mortgagee's
interest.  *Hunt* v. *Hunt*, 25 Am. Dec., 410.  As a plain
matter of intent, did not Apperson design what we would
call in common parlance a "release" of the lien to Mrs.
Skiles?  He could not, by assignment to Turk, afterwards
retract this act working the merger or release, and revive
the lien.  It would not do to say that a release of a lien
must be recorded.  Code, chapter 76, says it may be re-
corded, but does not, as in the case of the statute requir-
ing deeds to be recorded, render it null if not recorded.
It is merely a recorded receipt, designed to manifest by
record the cessation of a lien of record, and its more par-
ticular office is to revest title, which it was doubtful
whether mere payment would do before that act, in cases
of mortgages and deeds of trust.  To show that this posi-
tion is correct, see the declaration of section 7, that the
chapter shall not impair any deed of release or writing dis-
charging any lien executed before or after that chapter's
enactment.  So far from declaring the release void if not
recorded, it declares it still operative though not recorded.
It only adds strength to all this to say that Durbin became
purchaser under a sale under the deed of trust, before the
trustee was made a party, and has a deed and is a pur-
chaser for value, not to be disturbed by a court of equity.

A question, then, arises whether, though there is no ven-
dor's lien, there is a debt arising from the bonds given by
Mrs. Skiles creating a debt which a court of equity may
charge on this land as Mrs. Skiles' separate estate, as in
the ordinary case of a married woman's debt, on the prin-
ciple that the lien and bond are distinct things, that though
the lien be gone by release, the debt yet exists.  *Smith* v.
*Railroad Co.*, 33 Grat., 621; 3 Pars. Cont., 99.  But this
would seem unreasonable,—to say that it was the intent of
Apperson to release the land from the lien, and then turn
around and hold this same land liable to the same debt,
thus allowing the theory of the separate existence of the
debt to overrule the intention of the parties.

Next, as to title of the purchaser.  The title of the
purchaser, Tyree, having fallen with the reversal of the

former decree, he cannot be reimbursed, if he has paid, to the prejudice of the creditor and Mrs. Skiles, as his money did not go to pay liens having precedence over them; but he is entitled to be placed in *statu quo* by having his money, so far as paid, repaid by the commissioner, and any purchase-money notes given by Tyree canceled.     Decree affirmed.

*Affirmed.*