# CHARLESTON.

## MORRISON *v.* CLARKSBURG COAL AND COKE CO.

Submitted June 5, 1902.    Decided December 20, 1902.

1. CONVEYANCE—*Contract*—*Trust Deed.*

A. C. conveyed to C. the one undivided half of the coal in 386 acres of land for the consideration of one thousand dollars paid, and also granted the right to the grantee "To enter upon and occupy such parts or parcels of the tracts herein described as may become necessary from time to time for road and buildings required in the mining and transferring the coal to the railroad and for the use of the lands so required for road as aforesaid the said second party is to pay to the party of the first part the sum of five hundred dollars when he proceeds to remove the coal as aforesaid, but not before; for which sum a vendor's lien is hereby retained upon the property herein granted:" and warranted generally the property conveyed. A. C. afterwards conveyed to G. Jr., in trust to secure a debt to G. the whole of said three hundred and eighty-six acres of land without limitation, reservation or exception. Still later A. C. devised by will all of said 386 acres without limitation, reservation or exception, except as to the payment of residue of trust debt—three-fourths thereof to his son J. P. in trust for his three children M., J. and R., requiring J. P. to pay the residue of said trust debt to G., and the other one-fourth he devised to M. E. C. and I. W. other grandchildren of testator. At a sale under the trust deed M. purchased the three-fourths so devised which G. Jr., trustee, conveyed to him. M. also acquired the title from M. E. C. and I. W. of the remaining one-fourth. *Held:* That M. is entitled to the five hundred dollars reserved for use of the land for road and buildings when the coal began to be removed. (p. 333).

2. FEE SIMPLE.

Under section 8, chapter 71, Code, the conveyance by A. C. to G. Jr., and the devise to his grandchildren of the three hundred and eighty-six acres of land being without any words of limitation, must be construed to pass the whole estate and interest which A. C. had power to dispose of in such lands, no contrary intention appearing either by the grantor or will of said A. C. (p. 336).

Appeal from Circuit Court, Harrison County.

Bill by James H. Morrison against the Clarksburg Coal and Coke Company and others. Decree for defendants, and plaintiff appeals.

*Reversed.*

MILLARD F. SNIDER, for appellant.

DORRIS & DORRIS, for appellees.

McWHORTER, JUDGE:

Arthur Cowan was the owner of three tracts of land in Harrison County, one containing three hundred and ten acres, another sixteen acres, another sixty acres, aggregating three hundred and eighty-six acres. On the 16th day of February, 1860, he conveyed to Gideon D. Camden, Edgar C. Wilson and Delia M. Allen, executrix of Guy R. C. Allen, deceased, in consideration of one thousand dollars cash "All the one full half of all the stone coal in and upon the following tracts of land," describing the three hundred and ten acres and the sixteen acres of land, granting in the same deed to the said party of the second part the right to enter upon the said lands to dig, mine and remove the said coal with all necessary rights of way, but providing that before the vendees should proceed to dig, mine and remove the coal they were to pay to the vendor five hundred dollars, for which a lien was retained on the said coal; but the vendor had no right to demand the said five hundred dollars until the vendees should proceed to mine and remove the said coal. This deed was not recorded until January 2, 1885. By deed dated the 18th day of January, 1866, the said Arthur Cowan in consideration of the sum of five hundred dollars to be paid as thereinafter provided, without referring to the said deed of February 16, 1860, conveyed to Gideon Draper Camden

"One equal undivided half or moiety of the stone coal in and upon the tract of land herein particularly described." Then describing the three tracts constituting the said three hundred and eighty-six acres, and further granting to the said Camden "The right to enter upon and occupy such parts and parcels of the tracts herein described as may become necessary from time to time for roads and buildings, required for the mining and transferring the coal to the railroad and for the use of the lands so required for road as aforesaid, the said party of the second part is to pay to the party of the first part the sum of five hundred dollars when he proceeds to remove the coal as aforesaid, but not before, for which sum a vendor's lien is hereby retained upon the property herein granted, and the said Arthur Cowan doth hereby covenant with the said party of the second part that he will warrant generally the property hereby conveyed." Which deed was acknowledged by Cowan on the 26th of September, 1877, and a declaration of trust under seal by G. D. Camden, dated December 13, 1877, that the said property was held by himself as trustee for Edger C. Wilson, Guy R. C. Allen and himself, and the deed and declaration of trust were recorded December 13, 1877. On the 31st day of January, 1878, Arthur Cowan, by deed, conveyed to Nathan Goff, Jr., trustee, the three said tracts of land aggregating three hundred and eighty-six acres to secure a debt of three thousand and one dollars to Nathan Goff, the closing paragraph of which deed of trust is as follows: "The said land herein conveyed is also particularly described in a deed made by said Arthur Cowan to Gideon Draper Camden, on the 18th day of January, 1866, conveying to said Camden certain interest in the stone coal underlying the surface of said land, which said deed is recorded in said above clerk's office in deed book No. 60, folio 212, to which deed and said recordation thereof special reference is here made for a further description of the land herein conveyed. Except as to the said conveyance to said Camden, said Cowan warrants the property above described and hereby conveyed, generally." On the 19th day of April, 1879, the said Arthur Cowan executed his last will and testament, the fifth and sixth clauses of which whereby he disposes of the said three hundred and eighty-six acres of land known as "The Home farm," are as follows:

"5th.   I give to my said son James P., in trust for the use
of his two daughters, Mary Bell and Joanna and his son Robert
O., three-fourths of my home farm near Wilsonburg in said
county, but I require him to pay to Nathan Goff the residue of a
debt I owe him which was originally about three thousand and
one hundred dollars, and for which he has a lien on the same
farm, and to enable my said son, James P., to pay the Goff debt, I
release to him the payments of this note to me for *8.66* dollars, and
also give to him the benefit of two notes given to me by my son,
John T., but I only release to him his note aforesaid and give
him the benefit of his brother John's two notes in the event he
pays the Goff debt.

"6th.   The remaining fourth of my said home farm I give
to my two grandchildren, Michael E. Cowan and Ida Westwood,
his sister."

James P. Cowan failing to pay the Goff debt proceedings
were had in the circuit court of Harrison County, instituted by
Michael E. Cowan, Ida Westwood, *et al.,* against James P.
Cowan, *et al.,* wherein James H. Morrison became the purchaser
of an undivided three-fourths interest of said three hundred
and eighty-six acres of land at commissioner's sale under decree
of the court, at the price of five thousand and five hundred
dollars; and by deed dated the 7th day of December, 1881, N.
Goff, Jr., commissioner, conveyed the said three-fourths interest
to said James H. Morrison, purchaser.   Said Morrison also ob-
tained the title from said Michael E. Cowan and Ida Westwood
for the other one-fourth interest in said land.

James H. Morrison filed his bill in the circuit court of Har-
rison County against the Clarksburg Coal and Coke Co., a cor-
poration, X. Y. McCann and James P. Cowan, surviving exe-
cutors of Arthur Cowan, deceased, setting out the various con-
veyances mentioned and other conveyances of all the said coal
in said tract to said X. Y. McCann, and from him to the said
corporation defendant, alleging that the said five hundred dol-
lars had never been paid to the said Arthur Cowan or to his
executors, and that by virtue of the conveyances to him he be-
came the owner and was entitled to the same with interest from
the 10th day of July, 1900, when the defendant, the Clarks-
burg Coal and Coke Co., began to remove the coal from the
premises; that the same was a lien upon the undivided half of

the coal which was liable to be sold to satisfy the lien, and that said defendant, McCann was also liable to pay said five hundred dollars as agreed by him in the deeds from the heirs of Edgar C. Wilson and Guy R. C. Allen, and that said five hundred dollars never having been paid was due to plaintiff, and praying for a decree requiring said Coal and Coke Co. to pay the same, and also for a decree against McCann for the same and for the sale of the undivided half of said coal to satisfy the lien.

The cause was heard on the 16th day of January, 1901, upon the bill and exhibits and upon the several demurrers of X. Y. McCann and Clarksburg Coal and Coke Co. rejoinders therein by the plaintiff, when the court sustained the demurrers and plaintiff not desiring to amend his bill the same was dismissed and a decree for costs given the defendants; from which decree the plaintiff appealed and assigned the following errors:

"1.   The record clearly shows, that when Arthur Cowan conveyed the land in trust and by his will, that he conveyed the whole of the three hundred and eighty-six acres, which afterwards became vested in the petitioner, without any exception or reservation, including the coal, the five hundred dollars, for which a lien was retained on the one-half of the coal, to be paid for the use of the land, and that petitioner was entitled to the said five hundred dollars and the court erred in not so holding."

"2.   The record further shows, that the five hundred dollars to be paid by Camden was for the use of the land for roads, etc., and was a covenant running with the land. And when the entire land, including the coal and everything else without exception or reservation, was conveyed by Cowan and afterwards conveyed to petitioner, every interest belonging to Cowan, including the five hundred dollars, became vested in petitioner; and the court erred in not so holding."

"3.   The court erred in sustaining the demurrer to the bill."

"4.   The court erred in dismissing the bill."

It is insisted by appellant that the grantor, Arthur Cowan, in his deed of trust to Nathan Goff, and by his will executed afterwards, intended to, and did convey and devise all his right, title and interest to the said home farm of three hundred and eighty-six acres, including his right to the five hundred dollars to be paid when the purchaser of the one undivided one-

half interest in the coal should begin to mine and remove the
same.

Section 5, chapter 71, Code, provides among other things,
"Any interest in, or claim to real estate may be disposed of by
deed or will." And section 8 of the same chapter provides that
"Where any real estate is conveyed, devised, or granted to any·
person without any words of limitation, such devise, convey-
ance, or grant shall be construed to pass the fee-simple or the
whole estate or interest which the testator or grantor had power
to dispose of in such real estate, unless a contrary intention
shall appear by the will, conveyance, or grant." Section1 of·
chapter 72, gives the general form of a deed for conveying prop-
erty; and section two of the same chapter provides that "Every
such deed, conveying lands, shall, unless an exception be made
therein, be construed to include all the estate, right, title and in-
terest whatever, both at law and in equity, of the grantor, in
or to such lands." In his conveyance to Gideon Draper Camden
of the 18th of January, 1866, of the one undivided half of the
coal in said three hundred and eighty-six acres of land Arthur
Cowan conveyed the said coal and also the right to the grantee
"To enter upon and occupy such parts or parcels of the tracts
herein described as may become necessary from time to time,
for road and buildings required in the mining and transferring
the coal to the railroad and for the use of the lands so required
for road as aforesaid, the said party of the second part is to pay
to the party of the first part the sum of five hundred dollars
($500.00) when he proceeds to remove the coal as aforesaid,
but not before, for which sum a vendor's lien is hereby retained
upon the property herein granted, and the said Arthur Cowan
doth hereby covenant with the said party of the second part that
he will warrant generally the property hereby conveyed." Thus
it appears that the lien reserved attaches as well to the case-
ment in the land for road and buildings as to the coal conveyed.
It is insisted by counsel for appellees that the lien of five hun-
dred dollars reserved to said Cowan is on an entirely distinct
portion of land from that owned and claimed by appellant, and
then illustrate their position as follows: "Suppose that Cowan,
being the owner of ten acres of land, had sold to Camden, by
title bond as in the latter case, a two acre lot, or had conveyed
to him the legal title thereto and retained a vendor's lien, as in

the former case, and had thereafter sold and conveyed to Morrison the remaining eight acres, by what possible right could Morrison have claimed the right to collect from Camden the unpaid purchase money for the two acres? Such is the contention of the appellant as viewed by the appellees." This is not an apt illustration, the supposed conveyance is of the whole of two acres of a tract of ten acres severed completely, and as a whole making it an independent tract with no interest remaining by easement or otherwise to connect it with the remaining eight acres of the tract, and the supposed sale of the eight acres to Morrison is wholly independent of the two acres, and of course, Morrison could under no circumstances of such supposed conveyance, have had any interest in the lien reserved on the two acres. The conveyance from Cowan to Goff grants the whole tract of three hundred and eighty-six acres without reservation or exception as to the coal or any part of it, or any part of the land or interest in the land. True it refers to the deed for the coal to Camden and makes exception in his warranty, of said conveyance to Camden; but it is not excepted nor reserved in the grant. Cowan in his devise of said land afterwards on the 18th of April, 1879, makes no reservation or exception. Neither the conveyance to Goff nor devise by will can in any way affect the coal interest of Camden, but the same being without limitation shows the purpose of the grantor and testator to be to dispose of all his right, title, interest and estate in or to said property. In the fourth clause of his will the testator says: "I have heretofore advanced to my sons, Robert E. and John T. their full shares of my estate," and after requesting that his executors purchase and present to his son, Robert E., a suitable gold headed cane with appropriate inscription, he says: "After complying with the above request I desire that the residue of my estate shall be divided into four equal parts and to be given to the children of my four sons, Robert E., Michael M., (who is now dead), James P. and John T." The children of the four sons are thus made the sole residuary legatees. Taking the whole will together there can be no question that the testator intended the three children named, of James P., who were given three-fourths of the said home farm, held in trust for them by James P., their father, and testator's other grandchildren, Michael E. Cowan and Ida Westwood, his sister, the remaining

one-fourth; and that they should have the benefit of the lien reserved for the five hundred dollars. The purpose of the same was to make good the damage to the land devised, by the use of the same for road and buildings, and by the mining and removal of the coal. In the devise as well as in the conveyance to Goff there was no exception or reservation, either as to the coal or as to the lien retained in the deed to Camden. In *Turk* v. *Skiles,* 45 W. Va. 82, (Syl. pt. 1), it is held: "The holder of a vendor's lien joins with the owner of the land charged with such lien in a deed of trust granting the land by the words, 'grant, bargain, sell' and confirm,' to a trustee in trust to secure a debt to a third party, and to pay the balance of proceeds of sale under it to the owner of the land owing the vendor's lien. Such deed of trust will discharge the vendor's lien as to both the debt secured by the· deed of trust and the owner of the land. Sush deed of trust is as to the owner of the land a grant, and as to the holder of the lien a confirmation." Also in *Building and Loan Association* v. *Page,* 46 W. Va. 302, (Syl. pt. 1), it is held: "A general warranty deed, without limitation, reservation, or exception conveys all the grantor's right, title and interest, both legal and equitable, in and to the property embraced therein, including the right of retention of the title to secure the unpaid purchase money due and owing from a prior recorded title-bond purchaser of an undivided interest in such property, and operates as a transfer of such unpaid purchase money to the grantee; and after due recordation of such deed, and notice thereof, such title-bond purchaser cannot pay such unpaid purchase money to his vendor, the grantor in such absolute deed, except at his own risk and peril, but must pay  same to the grantee before he can demand conveyance of the retained legal title."

Counsel for appellees contend that the cases just cited do not apply to case at bar, because the conveyance by Cowan to Goff and his devise in his will are of an entirely distinct portion of the land and no part of the lien-subject. The conveyance to Goff as well as the devise covers and includes the whole property without exception, reservation or limitation, and is effective as to the surface of the land to be used and damaged by the mining and removal of the coal, and as to any interest the grantor might have therein of any character whatever. It is

true the conveyance and devise are inoperative as to the interest in the coal, but it. shows that the grantor intended to dispose of every interest he had in the property, legal or equitable. "Any deed that transfers the title passes to the grantee the benefit of a covenant that runs with the land, such is the effect of a quit claim deed, or a deed or release without covenants." 1 Jones on Real Property, section 933 and section 935. "Covenants that run with the mortgage land inure to the covenantees mortgagee and his grantees, in proportion to their shares and interest. They inure to the benefit of a purchaser at the foreclosure sale."

Appellant in his brief has well said: "This is a vendor's lien of a peculiar nature, it being in the nature of a covenant running with the land." It appears that the purchase money of the coal being one thousand dollars was paid in hand as set forth in deed from Arthur Cowan to Camden, *et al.,* dated February 16, 1860, which deed was lost or mislaid, and not recorded until 1885; the loss of which deed was the occasion of the deed of the 18th of January, 1866, being made; and the lien of five hundred dollars retained was not for the coal conveyed but for the use of the land and damages that might be done to it in the removal of the coal and for road, buildings, etc., and was not to be paid until the purchaser of the coal should begin to remove the same; and as the five hundred dollars was intended to make good the damages to the land and for the use of the same in removing the coal it becomes very clear that Cowan intended that his devisees should have the benefit of the five hundred dollars, and his devise as well as the conveyance to Goff being without any words of limitation, must under section 8, chapter 71, be construed to pass the whole estate and interest which Cowan had power to dispose of in such property, no contrary intention appearing either by the grant or the will of said Cowan.

The demurrer to plaintiff's bill should have been overruled. The decree is therefore reversed and the cause remanded to the circuit court of Harrison County for further proceedings to be had therein.

*Reversed.*

POFFENBARGER, JUDGE, (*concurring*) :

I concur in the decision, but not upon the grounds stated in the opinion of the majority. Cowan granted coal under the land and "the right to enter upon and occupy such parts and parcels" of the land as should become "necessary from time to time for road and buildings in the mining and transferring the coal to the railroad and for the use of the lands so required;" Camden was to pay five hundred dollars, when he should proceed "to remove the coal as aforesaid but not before," and, for that sum, a vendor's lien was retained upon the property granted. Afterwards, Cowan conveyed the land in trust to secure the payment of a debt, without excepting or reserving what had been conveyed to Camden. Still later he devised the land, without exception or reservation.

The theory of the opinion is that said sum of five hundred dollars so secured, was an estate or interest in the coal, and that as the coal was included in the deed of trust and will, it passed from Cowen, although the coal itself did not pass by these two instruments. It treats the five hundred dollars as a debt created at the time of the execution of the deed executed to Camden, but, nevertheless, as a part of, or interest in, the coal, because secured upon it by a vendor's lien, so that it passed by the subsequent deed of trust and will, although not mentioned nor expressly granted or assigned by those instruments. That a chose in action or claim of any kind capable of assignment may be transferred by deed, as well as by any other writing is beyond question, but, to pass, it must be, in some way, included in, or covered by, the deed. No mention of it appearing in the deed or will, this supposed five hundred dollar debt did not pass unless it was a part of the coal. It may have so passed, but it is by no means clear to me, nor do I regard *Turk* v. *Skiles,* 45 W. Va. 82, and *Building Association* v. *Page,* 46 W. Va. 302, as having established this proposition. So far as the lien reserved as security for the debt, conflicts with the subsequent deed made by the lien creditor, conveying away the lien-subject, it must yield, on the principle of estoppel or release by implication, as between the parties. That suffices to work out the equities of the parties in *Turk* v. *Skiles.* In the similar case of *Bank* v. *Harman,* 75 Va. 604, it was done by treating the second grantee as a purchaser for value

without notice.  The lien here was a mere security for the debt. Its release or postponement by express agreement or implication does not destroy the deed.  If the deed created a present debt, it was a thing of itself, separate, apart and distinct from the land.  It was personal property, a claim secured by lien, and in no sense an estate or interest in the land.  Though an assignment or transfer of it would carry the lien it does not follow that an assignment of the lien would carry the debt with it.  Destruction of the debt extinguishes the lien, but the annihilation of the lien does not extinguish the debt.

All the authorities hold that a lien upon land is not an estate or interest in the land.  "A lien is not, strictly speaking, either a *jus in re* or *jus ad rem;* that is, it is not a property in the thing itself, nor does it constitute a right of action for the thing.  It more properly constitutes a charge upon the thing." Story's Eq. Jur. ss. 506, 1215; *Brace* v. *Duchess of Marlborough,* 2 P. Wms. 491; *Ex Parte Knott,* 11 Vesey 617. "'Lien' is a term of very large and comprehensive signification.  In its widest sense it may be defined to be a hold or claim which one person has upon the property of another as a security for some debt or charge.  But it never imports more than security; it confers no right of property." 19 Am. & Eng. Ency. Law (2d Ed.) 6.  Even a mortgagee, holding the legal title, is said to have in equity, only a chattel interest. 4 Kent's Com. 160; *Clark* v. *Beach,* 6 Com. 142; *Wilkins* v. *French,* 20 Me. 111; *Kinna* v. *Smith,* 2 Green (N. J.) 14; *Clift* v. *White,* 12 N. Y. 519.  "A lien upon land is not an estate or interest in it." *Brackett* v. *Gilmore,* 15 Minn. 251; *Bidwell* v. *Webb,* 10 Minn. 62; *Donohue* v. *Ladd,* 31 Minn. 244; *Power* v. *Bowdle,* 3 N. Dak. 107; Bouvier's Law Dict. Title, "Lien."  "An equitable lien is not an estate or property in the thing itself, nor a right to recover the thing,—that is, a right which may become the basis of a possessary action; it is neither a *jus ad rem* nor a *jus in re.*  It is simply a right of a special nature *over* the thing, which constitutes a charge or encumbrance upon the thing so that the very thing itself may be proceeded against in an equitable action, and either sold, or sequestered under a judicial decree, and its proceeds in the one case, or its rents and profits in the other, applied upon the demand of the party in whose favor the lien exists.  It is

of the very essence of this conception, that while the lien con-
tinues, the possession of the thing remains with the debtor
who holds the *proprietary interest* subject to the encumbrance.
Pom. Eq. Jur. ss. 165, 1233. See *Camden* v. *Alkire,* 24 W. Va.
674; *Criss* v. *Criss,* 28 W. Va. 388.

Though the appellant can have no right to said sum on the
theory that it came to him as a fund or claim by virtue of the
conveyances, he is entitled to it, because, as a fund, it was non-
existent at the time said subsequent conveyances under which
he claims were made, but has since sprung up out of the land,
while owned by him, by virtue of the provisions of the deed
from Cowen to Camden. It is compensation for the use of
Morrison's land, and, in substance and nature, a rent, though
not payable periodically, and, in that respect, not strictly
within the definition of rent. It is a gross sum stipulated for
such use as might be made of the land in the future under the
terms of the deed, and never to become due and payable until
the land should be so used, and, in fact, did not become due,
or, in any sense, a liability until about forty years after the
date of the deed. It plainly appears from the language of the
grant of the easement that it was intended to take effect *in
futuro* and not *in presenti,* and that the springing up of the lia-
bility to pay the five hundred dollars and the taking effect of the
grant in possession should be simultaneous, and that the vendor's
lien was reserved to secure the payment of a debt designed to
arise in the future. At common law, a freehold estate in corpo-
real property could not be made to commence *in futuro,* but com-
mons, rents, ways, franchises, remainders, reversions, etc., be-
ing incorporeal and neither requiring nor being susceptible of
livery of seizin, were said to lie in grant, and estates in them
could be made to commence *in futuro.* Such grants are known
as executory limitations. "The freehold remains in the
grantor, or in the devisor's heirs, until the time appointed for
it to take effect, and then passes to the grantee or devisee, by
the force and effect of the several statutes. The future limita-
tion may be either appointed to arise upon a contingency (*e. g.*
a devise to the heirs of A. who is yet living, or to the unborn son
of A.), or at a period certain (*e. g.* a grant to A. for life, or in
fee, to commence five years from the date)." 2 Min. Inst.
431. The statutes referred to are those of uses, wills and

grants, making possible that which could not be done at common law in the case of a freehold in corporeal property. See Code, chapter 17, section 5. Inspection of the clause creating this easement discloses that in operation and effect it, as well as the liability to pay the money, was exectuory and contingent. As the burden of the easement, analogous to that of a tenancy, fell upon the land forty years after the date of the deed, while owned by Morrison, he is both legally and equitably entitled to the stipulated compensation for that burden, analogous to the rent reserved upon a lease to a tenant, which always goes, to the owner of the land, the right to it passing successively out of the grantors and into the grantees, as often as conveyances are made during the existence of the tenancy, each owner taking the rent that accrues while he owns the land. 2 Min. Inst. 756, 757. Code, chapter 93, sections 1-4.