LEHIGH COAL & IRON COMPANY, Respondent, vs. WEST SUPE-
RIOR IRON & STEEL COMPANY, Garnishee, Appellant.

*October 1 — October 22, 1895.*

*Delivery of drafts in escrow: Garnishment.*

To constitute a good delivery of drafts in escrow the person making
such delivery must part with the possession and divest himself of
all power and dominion over them. Thus, if accepted drafts are
delivered by the vendee of goods to a depositary who is to hold
them until notified of the acceptance of the goods and directed
by said vendee to turn the drafts over to the vendor, there is no
escrow.

APPEAL from a judgment of the circuit court for Douglas
county: R. D. MARSHALL, Circuit Judge. *Affirmed.*

This is a garnishment proceeding. In June, 1892, the
main defendant, the West Duluth Furnace Company, was
operating a blast furnace at West Duluth, Minnesota, and
was manufacturing pig iron and selling the same in large
quantities to the garnishee defendant. October 9, 1892, the
furnace company owed the plaintiff more than $24,000 for
coke sold. June 9, 1892, the plaintiff brought suit against
the furnace company to recover the amount so due it for
coke, and at the same time garnished the *West Superior Iron
& Steel Company.* December 15, 1892, the plaintiff obtained
judgment against the furnace company, in the main action,
for $25,850.59. In the garnishee action the garnishee de-
fendant answered, admitting an indebtedness to the furnace
company of $1,890.36, and denying all further liability. The
plaintiff took issue upon this answer, and the garnishee ac-
tion was tried by the court early in the year 1893.

At the close of the trial the court made findings of fact,
in which it was found substantially as follows: That in No-
vember, 1891, the furnace company made a contract with
the garnishee defendant by which the garnishee agreed to

purchase of the furnace company all the pig iron suitable for the manufacture of Bessemer steel which the furnace should produce, not exceeding 20,000 pounds, payment to be made on the 15th of each month for the iron delivered and accepted during the preceding month; that the plaintiff obtained judgment against the furnace company for $25,850.59; that a large amount of pig iron was delivered by defendant to the garnishee before the garnishment; that on or before the 24th of May, 1892, and while the defendant was owing the plaintiff as above stated, arrangement was made between defendant and the garnishee by which the garnishee, instead of paying for iron furnished on the 15th of each month, was to give the defendant accepted drafts to be paid at some time in the future, the said drafts to be accepted by the garnishee upon receipt of bills of lading for iron delivered, but that said drafts were to be delivered to George F. Harriman, to be held by him until the officers of the garnishee should notify him that the iron had been weighed and stood the test of a chemical analysis made by the garnishee; that at the time of the making of this arrangement the furnace company was owing large amounts of money for labor and material, besides that which it owed to the plaintiff, and was in fact insolvent, and that the garnishee knew that the defendant was largely indebted, and also knew that the defendant owed the plaintiff a large sum of money, and knew that this claim was disputed by the defendant; that the said arrangement for the delivery of the drafts to Harriman was made with the purpose and intent to hinder and delay the plaintiff from collecting its claim against the defendant, or reaching by garnishment process any money that was due from the garnishee to the defendant; that after the making of said draft arrangement the garnishee accepted three drafts payable to the defendant, for the sums, respectively, of $6,000, $4,500, and $6,500, for iron delivered, and delivered said drafts to George F. Harriman, under said agreement; that,

before garnishment, Harriman had turned over to the furnace company the $6,000 draft, and that, at the time of the garnishment, Harriman held in his hands the remaining two drafts, and continued to hold the same until the furnace company gave and delivered to the garnishee a bond protecting it from all loss resulting from the turning over of the drafts from Harriman to the defendant; that at all times named in the findings said Harriman was in the employ of the garnishee as an accountant; that the drafts had never passed from the control of the garnishee before garnishment, and that while they were in the hands of Harriman they were subject to the orders and under the control of the garnishee; that Harriman was to hold the same until ordered by the garnishee to turn them over to the defendant; that Harriman had never agreed to turn over the drafts to the defendant, and that they never were turned over until after the giving of the undertaking aforesaid, and until after he had been ordered to turn them over by the garnishee, and that Harriman, in holding said drafts, was acting on behalf of the garnishee and under its orders and control, and not in pursuance of any agreement with the defendant; that at the time of the garnishment the garnishee owed the defendant $1,890.26, over and above the sums mentioned in the drafts; that no indebtedness accrued after the garnishee's answer was made, and that the garnishee was indebted to the furnace company at the time of the garnishment, except so far as the garnishee is entitled to credit for said drafts, in the sum of $18,890.36.

As conclusions of law from these facts, the court found that the garnishee was not liable for the $6,000 draft which had been delivered before the garnishment; that the agreement for the making and depositing of the drafts with Harriman was fraudulent as against the plaintiff, and was ineffectual to place the indebtedness of the garnishee beyond the reach of the plaintiff; and that the plaintiff was entitled

to judgment for $12,890.36, being the sum represented by the drafts which were still in the hands of Harriman at the time of the garnishment, and the balance upon open account. Judgment was entered upon these findings for the plaintiff, and the garnishee defendant appealed.

For the appellant there were briefs by *F. W. Downer, Jr.,* and *Spooner, Sanborn & Kerr,* and oral argument by *J. B. Kerr* and *A. L. Sanborn.* They contended, *inter alia,* that the intention of the parties clearly was that the delivery of the drafts to Harriman should operate as an escrow. It was therefore as plainly a delivery in escrow as if that word had been employed in agreeing upon the arrangement. *White v. Bailey,* 14 Conn. 271; *Clark v. Gifford,* 10 Wend. 310; *Gilbert v. N. A. Ins. Co.* 23 id. 43; *Jackson v. Catlin,* 2 Johns. 259; *Jackson v. Sheldon,* 22 Me. 569. The condition of the escrow was the acceptance of the iron, and the liability upon the drafts accrued upon the happening of such condition without their delivery. Daniel, Neg. Inst. § 68; 1 Parsons, Notes & Bills, 51; Norton, Bills & Notes, § 50; 6 Am. & Eng. Ency. of Law, 867; *Prutsman v. Baker,* 30 Wis. 644; *Taylor v. Thomas,* 13 Kan. 217; 3 Washb. Real Prop. (4th ed.), 305; *Shirley v. Ayres,* 14 Ohio, 308.

For the respondent there was a brief by *Ross, Dwyer & Hanitch,* and oral argument by *Louis Hanitch* and *W. D. Dwyer.* To the point that, the drafts being still under the control of the garnishee, there was no delivery for any purpose, they cited *Prutsman v. Baker,* 30 Wis. 651; *Fitch v. Bunch,* 30 Cal. 213; *Cook v. Brown,* 34 N. H. 460; *Wier v. Batdorf,* 24 Neb. 83; *Campbell v. Thomas,* 42 Wis. 437, 440.

WINSLOW, J. The appellant claims that the circuit court erred (1) in finding that the drafts did not pass from the control of the garnishee; and (2) in finding that the arrangement for the delivery of the drafts to Harriman was fraudulent.

The question whether the drafts, when in Harriman's possession, were still under the control of the garnishee, is a vital one. If the circuit judge was right in finding that they were still under its control, then this judgment must be affirmed. This results from the application of well-understood legal principles. The drafts were not binding as contracts while undelivered. There is no claim of delivery, except of a delivery in escrow. To make a good delivery in escrow, the maker must part with the possession and divest himself of all power and dominion over them; otherwise, there can be no escrow. *Prutsman v. Baker*, 30 Wis. 644. Conceding that Harriman, though an employee of the garnishee, might lawfully act as the depositary, still, if the fact was that he was to hold the drafts until he was ordered by the garnishee to turn them over to the defendant, there was no delivery in escrow, because the garnishee retained absolute control over them, and could, by keeping silent, prevent their delivery for all time. The circuit judge found that such was the fact, and the legal conclusion necessarily followed that the drafts were in fact undelivered, and that the debt due from the garnishee to the main defendant was simply a contract debt and subject to garnishment. If the evidence justifies the finding of fact, the conclusion necessarily follows. We are not prepared to say that the evidence is so clearly against the finding as to justify a reversal upon that ground. The evidence was all obtained from officers of the two corporations,— the garnishee and the defendant,— and it is quite apparent that the witnesses were not willing witnesses for the plaintiff. There is certainly considerable testimony tending to show that the arrangement was that Harriman should deliver the drafts to the furnace company immediately upon acceptance by the steel company of the iron which they represented, but there is also testimony given by Harriman which tends directly to show that the agreement was that he (Harriman) was to hold

the drafts until he was notified by the steel company of its acceptance and directed to turn them over to the furnace company. In this state of the evidence we do not feel justified in reversing the finding of fact of the trial court.

This conclusion renders unnecessary any discussion of the second question raised by the appellant, because, however that question may be decided, the judgment must be affirmed if there was no valid delivery of the drafts in escrow.

*By the Court.*— Judgment affirmed.

MARSHALL, J., took no part.