23  425<br>35  474.

[No. 3425.   Decided December 8, 1900.]

PACIFIC NATIONAL BANK OF TACOMA, WASHINGTON, *Appellant,* v. SAN FRANCISCO BRIDGE COMPANY, *Respondent.*

EVIDENCE—VARYING  ESCROW  AGREEMENT—ADMISSIBILITY  OF PAROL.

Where a written agreement of escrow is neither ambiguous nor uncertain, but is sufficient to show the intent of the parties and a complete agreement in itself, parol evidence of a verbal contemporaneous agreement whose effect would be to modify and vary its terms is inadmissible, even if the evidence tends to prove an independent, collateral agreement, if such oral contract would entirely change the scope and meaning of the writing.

SALES—TIME AND PLACE OF DELIVERY.

Where goods are sold without any place of delivery being agreed upon a tender of delivery at the place where the goods

are when sold is sufficient, but to be effective must be made within a reasonable time.

Appeal from Superior Court, King County.—Hon. E. D. BENSON, Judge.  Affirmed.

*McClure & McClure* and *F. S. Blattner,* for appellant. *Ballinger, Ronald & Battle,* for respondent.

The opinion of the court was delivered by

FULLERTON, J.—This is an action on a promissory note. It appears from the record that on May 18, 1891, one George Roberts sold to the respondent his right in certain letters patent for a track laying machine, together with six certain machines manufactured under the patents, reserving to himself a royalty of a certain sum per mile for every mile of railway track laid with the machines then manufactured or thereafter to be manufactured under the patent. The machines transferred were at various places; one being in the possession of Woods, Larson & Co. at or near Missoula, Montana, and was at the time of the sale being used by them in the construction of a railroad known as the Missoula and Idaho branch of the Northern Pacific. For this machine a bill of sale was given, which, after reciting the sale of the machine for a consideration of one thousand dollars, contained a warranty on the part of the vendor to the effect that he would warrant and defend the sale of the same against the lawful claims of all persons whomsoever. After the sale was made the respondent proceeded to locate and obtain possession of the machines, and succeeded in obtaining possession of all of them save the one held by Woods, Larson & Co. Roberts was notified of the failure of the respondent to obtain possession of this one, and thereupon made an effort himself to get it, but with-

out success.  The machine was held by Woods, Larson & Co. under a contract with Roberts, by the terms of which they were entitled to its use until the railroad they were then constructing was completed.  They also claimed a lien on it for repairs made by themselves in a sum in excess of $1,800; a sum equalling, if not exceeding, the cost of a new machine.  The matter remained in this condition until February 23, 1892, at which time the respondent purchased of Roberts his reserved interests in the letters patent, and as part of the consideration therefor executed the note sued on in this action.  The note was placed in escrow with the Puget Sound National Bank of Seattle, the terms of the escrow agreement being evidenced by the following writing:

"The within note of $1,000.00, dated Feby. 23, 1892, made by San Francisco Bridge Co. to the order of George Roberts, and due one year after date, is to be held in escrow by the Puget Sound National Bank of Seattle to be delivered to said George Roberts when a certain Roberts Railroad Track Laying Machine now in the possession of Woods, Larson & Co. at Missoula, Montana, but owned by said San Francisco Bridge Co., is delivered to said San Francisco Bridge Co.; and it is further agreed that any expenses which may be sustained by said San Francisco Bridge Co. in obtaining possession of said machine is to be charged to said George Roberts and credited on the within note before delivery thereof.

Dated Feb. 23, '92.

San Francisco Bridge Co.<br>By J. D. Corey, Agent.<br>George Roberts."

Subsequent to the execution of this agreement neither party made any effort to obtain possession of the machine, it remaining in the possession of Woods, Larson & Co. until as late as 1897, if not until the commencement of this action.  In the meantime Roberts assigned his in-

terests in the note to the Citizens' National Bank of Tacoma, which in turn assigned it to the appellant. No delivery of the note was made, either to Roberts, his assignee, or the appellant, but it remained in the possession of the Puget Sound National Bank until the trial of this action. At the conclusion of the testimony on the trial —which was being had before the court and jury—the appellant moved that the case be taken from the jury and a judgment entered in its favor. The court thereupon took the case from the jury, but entered judgment for respondent. This appeal is from that judgment.

On the trial the appellant offered oral evidence tending to prove that at the time the escrow agreement was entered into, and as a part of the same transaction, the respondent undertook and promised that it would take all proper and necessary steps to obtain the possession of the track laying machine from Woods, Larson & Co., cause the amount of expense, if any, it should be put to in obtaining such possession to be credited on the note, and permit the note to be given to Roberts. The trial court rejected this evidence on the ground that the written agreement expressed the entire contract between the parties, and parol evidence was inadmissible to vary its terms. The correctness of this ruling is the principal question here. The contract, it will be observed, does not obligate Roberts to deliver the machine to the respondent, nor does it obligate the respondent to obtain its possession. But it is not, for this reason alone, either ambiguous or uncertain, nor does the fact clearly show that the entire contract between the parties was not expressed in the writing. Viewed in the light of the transactions which preceded it, it is clear that the primary object and intention of the agreement was to fix the amount and settle the liability of Roberts to the respond-

ent incurred by the breach of the warranty contained in the bill of sale. As we have said, the machine was in the possession of Woods, Larson & Co. They were holding it under a contract with Roberts by the terms of which they were entitled to its possession for an indefinite time; and were also claiming a lien thereon in a sum equaling the cost of a new one. True, Roberts claimed to have, and may have had, an offset to this claim, but it was uncertain at that time whether or not possession of the machine could be obtained without a cost greatly in excess of its value. It would seem reasonable, therefore, that neither party would undertake absolutely to obtain possession of the machine, but would rather reserve to himself a right without assuming an obligation so to do. The contract as written has this effect. By its terms Roberts was given the option either to deliver the machine to the respondent, or suffer a forfeiture of his interests in the note; while the respondent was given the option either to retain the note and forfeit its claim to the machine, or obtain possession of the machine and pay the note, less such reasonable charges as it may have been put to in obtaining such possession. These rights were, of course, interdependent, —the rights of the one depending in their finality on the action of the other,—but neither Roberts, nor his assignee, without showing that a delivery or tender of the machine was made to the respondent, or that it took it into possession, can maintain an action upon the note.

Nor was the evidence admissible on the ground that it tended to prove a separate collateral agreement, independent of the writing, and not at all in conflict with it. It requires no analysis to show that the oral contract would entirely change the scope and meaning of the writing. Aside from this, while it is true it is said (1

Greenleaf, Evidence (15th ed.) § 284a) that the rule which forbids parol evidence varying the terms of a written contract has no application where the original contract was verbal and entire, and a part only was reduced to writing, yet this exception to the general rule must not be too broadly or too loosely interpreted.

"For," as was said by FINCH, J., in *Eighmie v. Taylor,* 98 N. Y. 288, "if we may go outside of the instrument to prove that there was a stipulation not contained in it, and so that only part of the contract was put in writing, and then, because of that fact, enforce the oral stipulation, there will be little of value left·in the rule .itself. The writings which are protected from the effect of contemporaneous oral stipulations are those containing the terms of a contract between the parties, and designed to be the repository and evidence of their final intentions. If upon inspection and study of the writing, read, it may be, in the light of surrounding circumstances in order to its proper understanding and interpretation, it appears to contain the engagements of the parties, and to define the object and measure the extent of such engagement, it constitutes the contract between them, and is presumed to contain the whole of that contract."

The appellant contends, however, that the rule cited has no application to contracts relating to instruments deposited in escrow, and our attention is called to the cases of *Stanton v. Miller,* 58 N. Y. 200, and *Gaston v. Portland,* 16 Ore. 255 (19 Pac. 127), as supporting this contention. In the first of these cases the court says:

"The condition upon which a deed is delivered in escrow may be expressed in writing or rest in parol, or be partly in writing and in part oral. The rule that an instrument or contract made in writing *inter partes,* must be deemed to contain the entire agreement or understanding, has no application."

In the latter case this language is repeated. An inspection of these cases will show that this question was not presented by the facts in either of them, and we cannot think the learned judges who delivered the opinions in these cases meant to assert that in no case could the parties to an agreement depositing an instrument in escrow so frame a writing, expressing the conditions upon which the deposit was made, as to preclude either of the parties from afterward showing that this condition was something entirely different from the condition expressed in the writing. But, if this be what was meant, we cannot follow them. The object and purpose of the rule was to prevent a party from being compelled to rest his contract in the uncertain memory of either himself, his co-contractor, or those who may have heard the oral expressions which led up to and terminated in the final written agreement. There is certainly nothing in the nature of this character of contracts that ought to prevent a party thereto from having the benefit of this privilege. On the contrary, there is much reason for believing that this is one of those peculiar contracts where a party entering into it would wish that the terms should be so definitely and irrevocably fixed that he might at all times know the extent of his rights and liabilities thereunder.

We agree with the contention of the appellant that it would have been a sufficient compliance with the contract for Roberts to have tendered the machine to the respondent at Missoula, Montana, (2 Schouler, Personal Property [3d ed.] § 385), but we cannot agree that the evidence shows that such a tender was made, or that it shows a tender at any time or place prior to 1897, when Woods, Larson & Co. offered to deliver the machine to respondent's agent. This tender, however, as the trial court

rightly decided, came too late to render the respondent liable on the note.

The judgment is affirmed.

DUNBAR, C. J., and REAVIS and ANDERS, JJ., concur.