HANBY et al. v. FIRST NAT. BANK OF HEREFORD et al.

(Court of Civil Appeals of Texas. Amarillo. Jan. 24, 1914. Rehearing Denied Feb. 14, 1914.)

1. ESCROWS (§ 9*)—ESCROW AGENT—LIABILITY.

The rule which imputes to a person dealing with an agent knowledge of the agent's authority is based on a condition that such person is attempting to hold the principal liable on account of the agent's assumption of authority, and does not apply to a voluntary depositary in escrow, who was not bound to know the authority of an agent of certain of the parties making the deposit.

[Ed. Note.—For other cases, see Escrows, Cent. Dig. § 11; Dec. Dig. § 9.*]

2. ESCROWS (§ 9*)—DELIVERY OF SECURITIES —RESPONSIBILITY OF DEPOSITOR.

Where certain vendor's lien notes were delivered to a bank to be delivered to the payees on the joint order of all the parties, the bank was not bound to assume the responsibility of distributing the papers in accordance with the provisions of a prior contract entered into between the parties to which the bank had not assented.

[Ed. Note.—For other cases, see Escrows, Cent. Dig. § 11; Dec. Dig. § 9.*]

3. ESCROWS (§ 9*)—CONDITION—PERFORMANCE—DISMISSAL OF SUIT—"FINAL DETERMINATION."

Certain vendor's lien notes, executed in consideration of a transfer of an interest in real property, were deposited in escrow pursuant to a contract that they were to be delivered to the payees in case certain litigation then pending in the federal court should be "finally determined" in favor of one of the parties who was acting therein as the agent for all. *Held,* that "final

determination," as so used, meant a final determination of the rights of the parties to the action beyond appeal, and hence was not fulfilled by a dismissal of the action by consent of the parties thereto. Citing Words & Phrases, vol. 3, p. 2798.

[Ed. Note.—For other cases, see Escrows, Cent. Dig. § 11; Dec. Dig. § 9.*]

Appeal from District Court, Deaf Smith County; D. B. Hill, Judge.

Action by J. D. Hanby and others against the First National Bank of Hereford and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

G. W. Barcus, of Weatherford, and Fred C. Pearce and L. C. Penry, both of Plainview, for appellants. Carl Gilliland and Knight & Slaton, all of Hereford, for appellees.

HENDRICKS, J. Upon the 11th day of August, 1909, George W. Irwin, Jr., upon the one part, and the members of the commissioners' court of Collingsworth county, including the county judge, as the other parties, executed an instrument in writing, by the terms of which the county was to sell to Irwin the Collingsworth county school land, constituting four leagues, situated in Lamb county, Tex., and upon conditions and stipulations, all of which are unnecessary to disclose in this opinion. Irwin was attempting to purchase said land for himself and four others, viz., Woods, Hanby, Snyder, and Evants, which interests and obligations of the parties with the status of each with reference to the land was evidenced by another contract between the five individuals, the said Irwin to receive the final conveyance from said Collingsworth county, and evidently to become a trustee for the others when the land was conveyed. After the contract between Irwin and the commissioners' court had been executed, one Albert McRea filed a suit in equity in the federal court for the Northern district of Texas, at Amarillo, for the purpose of canceling the same, making the county and Irwin parties defendant to said suit. During the pendency of that suit, Hanby and Evants (Woods in some manner having been eliminated as an interested party) contracted to sell their interests in the land, and, in the contract with Collingsworth county, to Irwin and Snyder. The consideration of this latter contract was principally evidenced by vendor's lien notes jointly executed by Snyder and Irwin in different denominations, but severally to Hanby and Evants as payees, in accordance with the following provisions and conditions, appropriate we think, to the discussion of this cause: "(4) It is understood and agreed by the parties hereto that all of the above-described notes are to be deposited in the First National Bank of Hereford, Texas, to be held there in escrow subject to the final termination of the above-mentioned suit. It being further understood and agreed that neither of said

five mentioned notes shall be assigned or transferred during the pendency of the above-mentioned suit.

"(5) It is further understood and agreed that should the defendants be unsuccessful in the above-mentioned suit, or should the contract for the purchase of the above-mentioned land, as now existing between the said Geo. W. Irwin, Jr., and Collingsworth county, he canceled, set aside or held to be null and void for any reason, then and in that event, the five notes above described shall be held to have been executed without consideration and shall be null and void.

"(6) If the said Geo. W. Irwin, Jr., and Collingsworth county are successful in the above-mentioned suit and the contract for the purchase of said land is held valid and binding, then and in that event upon a final termination of the suit, the above-mentioned five notes shall be delivered by the said bank to the parties of the second part."

When the above contract was executed by the respective parties, it was not immediately delivered to the Hereford bank, which was called, for in the contract as the agent in escrow, but the delivery of same was postponed until the following morning, when the attorney who represented Snyder and Irwin in the preparation of said contract delivered the same with the notes to J. L. Fuqua, the vice president and active manager of the bank, in a sealed envelope, with an indorsement upon the back of said envelope, and a representation of a hand, with the fingers pointing to said indorsement, which latter is as follows: "To be held in escrow by the First National Bank of Hereford, and to be delivered by said bank only upon the joint order of George W. Irwin, Jr., J. P. Snyder, J. D. Hanby and W. R. Evants" (who were the parties executing said contract)—said indorsement having been made by said attorney. A conflict arises upon two contentions as to the indorsement upon the envelope; the plaintiffs Evants and Hanby, appellants herein, contending that they did not authorize the indorsement upon the envelope, neither was the indorsement upon the same when delivered to the bank; the defendants Irwin and the bank contending for the affirmative of both propositions. The appellants Hanby and Evants sued the bank as a corporation and J. L. Fuqua individually, also Irwin and Snyder, the makers of the notes, claiming that the conditions provided for in the contract with reference to the suit in the federal court instituted by McRae against Irwin and Collingsworth county had been fulfilled, introducing an order of said court showing the dismissal of said cause, based upon the agreement of the attorneys in that cause as part proof of the fulfillment of said conditions, and that the bank and Fuqua had violated the provisions of the contract calling for a delivery of the notes by refusing on demand to deliver the same, and was there-

by guilty of conversion; also claiming, in another count in their petition, that the bank, Fuqua, Snyder, and Irwin "entered into a conspiracy and agreement to defraud the plaintiffs out of the said notes and the collection and value of same." The appellants Hanby and Evants insist in this court that the verdict should have been rendered by the jury, and judgment should have been entered by the court, in their favor, and are the only issues assigned here for the purpose of a reversal.

The trial court submitted the following special issues to the jury:

"Issue No. 1: Was the indorsement on the envelope marked Exhibit A introduced in evidence placed on said envelope before or after the same was delivered to the First National Bank?" The jury, responding to this issue, answered: "Before envelope was delivered to the bank."

"Issue No. 2: Was the indorsement on the envelope marked Exhibit A introduced in evidence written on by Slaton, with the knowledge or consent of J. P. Snyder, W. R. Evants, J. D. Hanby, and Geo. W. Irwin, Jr.?" The jury answered this issue by stating that the indorsement on the envelope was made with the knowledge and consent of Snyder and Irwin, but not with the consent of Evants and Hanby.

As stated, this cause is briefed and discussed by appellants entirely upon the theory that the verdict and judgment should have been in their favor, and, in this connection, we refer to article 1985 of the Revised Statutes of 1911, which now govern the submission of special issues, gauging the responsibility of the trial court, the obligations of the litigants with reference to such matters, and which, in connection with the succeeding article 1986, impresses and declares the effect of a special verdict upon the issues actually submitted. If the judgment of the court upon any tenable theory, considering the pleadings and evidence, all other issues having been eliminated or waived, can be sustained, appellant's position is necessarily untenable.

[1] We believe the gravamen of appellants' contention against the bank and Fuqua is that, the jury having found that the indorsement upon the envelope not having been written upon the same with their consent, and the evidence showing that the bank or Fuqua had refused to deliver the notes upon demand, the written contract between them and Irwin and Snyder should be the sole criterion of the responsibilities of Fuqua and the bank. As an agent in escrow, and the conditions in the contract vitalizing the notes having happened, the duty of Fuqua was imperative to deliver the notes, and, if not delivered, the bank or Fuqua, one or both were guilty of conversion.

Appellants in this court are bound by the verdict of the jury that the indorsement was upon the envelope when handed to Fuqua.

Fuqua and Slaton testified that the latter's instructions to the former were those written on the outside of the sealed envelope; hence, when the envelope was delivered by Slaton and Irwin to Fuqua, what was the character of the contract actually made with Fuqua measuring his responsibility as a depositary when the envelope was delivered? The appellants, it is true, allege in their petition that the bank and Fuqua accepted the deposit and the notes, "fully understanding at the time of accepting said notes * * * that the same were to be delivered to these plaintiffs at the termination of the suit in the United States court at Amarillo," but the appellant does not assign error upon any issue of actual knowledge by Fuqua of the terms of the written contract at that time, and, when we inspect the record upon such a proposition, we find it not proven and view the testimony as tending to prove, if not actually proving conclusively, a contrary fact. It is true, we are not able to say that the jury expressly found that the contract between Slaton and the bank was in accordance with the directions and memorandum and upon the outside of the envelope, though the finding of the jury under the law was equivalent to such a result. A submission to the jury by the court for a finding by the latter of the real contract between Slaton and the bank was not made nor was it specially requested by appellant, but the evidence is practically undisputed that such was the contract upon which Fuqua received the papers, and the law now is, "upon appeal or writ of error, an issue not submitted and not requested by a party to the cause, shall be deemed as found by the court, in such manner as to support the judgment; provided, there be evidence to sustain such a finding." Article 1985, R. S. 1911, supra.

Appellants say: "The defendants plead specially (meaning Fuqua and the bank) that the papers were delivered by Slaton in pursuance of an express contract. * * * The jury finds that such contract was not made." The jury does not find that the contract between Slaton and the bank was made in accordance with the indorsement upon the envelope, but found that the indorsement was upon the envelope when delivered to the bank by Slaton; also finding that the appellants did not consent to the same. The appellants further say that "the effect of the verdict is that the parties did not give Slaton any instructions to be communicated to the bank," and further argue upon such a premise that "this suggests the inquiry as to the effect of his having given such instructions as those disclosed by the evidence," and suggests the rule for the purpose, we presume, of destroying the contract which Fuqua made with Slaton, that "one dealing with an agent is bound to a knowledge of the agent's authority," a general rule undisputable when applicable. The duties of an escrow agent are ordinarily gratuitous;

he becomes bound and is constituted the agent of all parties by virtue of the assumption of the obligations when he accepts the escrow. The rule of law which imputes to a third party, when dealing with an agent, a knowledge of authority is ordinarily based upon a condition where the third party is attempting to hold the principal liable on account of the assumption of power by said agent—the third party deriving some gain or some consideration from the principal on account of the agent's acts if he can hold the principal liable. The reason of the rule, we think, refutes the applicability of same to the status of case presented here. A. delivers certain papers to B. with a memorandum of directions, which the latter accepts as the measure of his duty to C. and D., and one of them, C., denies the authority of the agent to make such a memorandum, and further asserts that B., the recipient of the papers, is bound by the agent's actual authority, because the law imposes upon him a contract which B. only was authorized to make, though a different contract was actually made; the depositary not inquiring, and, on account of the failure to do so, the law imposes a constructive contract upon him, although actually having made another. The rule is not so extensive, even in cases of ordinary agency. The law may protect the principal for lack of authority, but it will not substitute a contract which the principal asserts the agent should have made, and hence hold the third party liable upon one which the agent was authorized to make, but never actually made.

[2] Appellants further say that Fuqua and the bank knew that the condition was fulfilled in the executed contract with reference to the Collingsworth county land, and knew the lack of Slaton's authority at a time when Evants and Hanby demanded the notes, claiming the same were ready for delivery. At this point in the transactions between these parties, it seems that Irwin and Snyder directed Fuqua to hold the notes, and Fuqua, when his attention was called to the provision in the written contract with reference to the delivery of the notes in conformity with certain provisions, asserted that he construed the contract differently. It seems that the matter of his instructions upon the back of the envelope evidenced by the indorsement were not discussed between them when the refusal was made by Fuqua. The jury having found that they were upon the envelope when delivered by Slaton to Fuqua, there is nothing in this evidence which imputed to Fuqua at this time and bound him thereby that the provisions of the written contract were the only provisions which he had a right to consider at that time with reference to his obligation to deliver—it was not mentioned that they were the only provisions of the contract which he should consider as a designation of his duties.

Appellants further say: "It must be borne in mind that the plaintiffs' cause of action is one arising out of an executed contract. * * * By this contract the parties were firmly bound, and rights vested immediately upon the happening of the specified event." We presume the appellants mean the provisions of the contract with reference to the deposit which was executed by the parties, and not the agreement made between Slaton and Fuqua; the further logic of this contention being that, if Evants and Hanby did not give Slaton authority to make the contract he made, the case of Robbins v. Magee, 76 Ind. 381, is applicable, and that no force should be given to the directions by Slaton to Fuqua, and the other contract controls.

In the Robbins-Magee Case a composition agreement was made by a debtor who executed a deed to certain real estate for the benefit of certain creditors, and was deposited with one Scoby, and which Scoby was to deliver to the trustees when certain creditors signed the composition agreement. After this agreement was made, the grantor in the deed, in delivering the papers to Scoby, instructed him not to deliver the deed to the trustees until other creditors, not mentioned in the composition agreement, should also sign a release. Scoby delivered the deed to the trustees, who were to effectuate the composition agreement, disregarding the secret instructions; the written conditions in the composition agreement having been fulfilled by the signature of the creditors named. The court in that instance, as indicated by the instructions of the trial judge, held that the deed, when delivered by Scoby to the trustees, "took effect as a conveyance, although secret instructions may have been given to Scoby to hold the deed until other conditions, never suggested to the creditors or trustees by the plaintiffs or Scoby, should be performed." The Supreme Court of Indiana said: "Secret instructions will not affect third persons who rely upon the open conduct and visible acts of a party. * * * If the written instrument correctly expressed the contract of the parties, appellants could not render its terms ineffective by oral instructions privately given his attorney and agent; for such the evidence shows Scoby to have been." Plaintiffs in that cause could not question the delivery of the conveyance by Scoby to the trustees when made by the latter in accordance with the agreement actually made and fully known by the agent in escrow to have been made; nor could they destroy such an agreement by saying that Scoby should have followed what the court designates as secret instructions and known to Scoby as secret instructions, and which he evidently knew the other parties had never agreed to. When analyzed, we think clearly that case has no application to the cause presented here.

The Supreme Court of Michigan, in the case of Culy v. Upham, 135 Mich. 131, 97 N. W. 405, 106 Am. St. Rep. 388, cited by appellant, held that "a verbal direction by a grantor that his deed, which he deposits with a third person, shall be delivered upon his death, if it amounts to a modification of the written conditions of the deed, is ineffectual under the statute of frauds."

The case of Pacific National Bank v. San Francisco Bridge Co., 23 Wash. 425, 63 Pac. 207, holds that on the evidence of any oral statements or instructions given by the grantor to the depositary at the time the deed was deposited was inadmissible to contradict the written agreement as to the terms and conditions attached to the escrow.

The Supreme Court of Vermont, in the case of Wilkins v. Sommerville, 80 Vt. 48, 66 Atl. 893, 11 L. R. A. (N. S.) 1183, 130 Am. St. Rep. 906, decides, however, that "no force is given to a deed deposited in escrow which it would not otherwise have by the effect that the vendor imposes conditions as to the right of withdrawal which violates the terms of his contract as to the deposit of the deed." The Supreme Court of New York, in the case of Stanton v. Miller, 58 N. Y. 202, announced also that a deposit with a third person may be wholly in writing or wholly in parole, or partly in both, and that the rule that an instrument between the parties containing an agreement in this respect concludes the entire agreement does not apply.

The higher Court of Chancery of New Jersey, in the case of Fred v. Fred, 50 Atl. 776, followed the New York rule in the following language: "The terms of a deposit in escrow may be in writing or in parole, or partly in writing and partly in parole; and the rule that a contract made in writing inter partes must be deemed to contain the entire agreement does not apply. Stanton v. Miller (1874) 58 N. Y. 203." Continuing, that court said: "The receipt signed by Leucht, the depositary, by which he declared that he was to deliver the notes to complainant upon the written consent of Kalisch and Newman, was not intended to express the entire contract between the parties as to the terms and conditions upon which complainant was entitled to the notes, but was intended to relieve the depositary from the responsibility of deciding whether the terms and conditions had been performed. So far as he was concerned, the decision upon this point was to be the joint decision of the two attorneys."

The Court of Civil Appeals of the Second District, in the case of Peters v. Strauss, 132 S. W. 956, concludes, following Devlin on Deeds, vol. 1, § 318, that where a deed is delivered to another party, with instructions not to deliver to a third party, except upon his (the depositor's) order or request, the instrument was not placed in escrow, because it is deemed in law to be still in the grantor's possession; and the Supreme Court of California, in the case of Miller v. Sears, 91

Cal. 282, 27 Pac. 589, 25 Am. St. Rep. 176, concludes that a deed cannot be regarded as an escrow if the title of the property remains to be settled to the satisfaction of the contracting parties; and the Supreme Court of Wisconsin, in the case of Lehigh Coal & Iron Co. v. West Superior Iron & Steel Co., 91 Wis. 221, 225, 64 N. W. 746, 748, declares that, "to make a good delivery in escrow, the maker must part with the possession, and divest himself of all power and dominion over them (meaning certain drafts); otherwise there can be no escrow."

The Court of Chancery of New York, in the case of James & Blake v. Vanderheyden, 1 Paige, 385, held that, "where a bond and mortgage and deed were delivered to a third person to be kept by him during the pleasure of the parties, and subject to their further order, * * * that the papers were not escrows, and that the third person was a mere depositary."

We are not engaged in reconciling these decisions, some of which are cited by the respective litigants as affecting the disposition of this cause, for the reason that we are convinced from the evidence in the cause, concluded by the verdict of the jury and the judgment of the court, that Fuqua and Hanby and Evants never made a contract by virtue of which Fuqua or the bank was to become responsible for the delivery of the notes, in accordance with the provisions in the written instrument executed by the four parties named; their minds never met upon a basis of the measurement of duty and the creation of rights suggested and by the written contract. While we are not adopting the principle in toto advanced in the cause of Fred v. Fred, decided by the New Jersey court, however, there is a suggestion in the quotation in a sense applicable to the condition here. The court there concludes that the receipt given by Leucht, the depositary, was intended to relieve him "from the responsibility deciding whether the terms and conditions had been performed. So far as he was concerned, the decision upon this point was to be the joint decision of the two attorneys." So far as Fuqua was concerned, although Evants and Hanby may not have agreed to it, the decision upon the question of the delivery of these papers was to be the joint decision of all the parties named upon the back of the envelope. If the presentation of the responsibility derived from the written contract had been presented to Fuqua when the envelope was delivered, it certainly would have been the exercise of wisdom on his part to have rejected such an escrow, and he may have done so. The Supreme Court of Louisiana, in the case of Lafarge v. Morgan et al., 11 Mart. (O. S.) 468, where a deposit was made and "notes were to be held until the mortgages on said plantation are raised, 'and when said mortgages are raised, the notes to be restored,' " in discussing the same, said: "Who was to be the judge, or to decide when the mortgage had been raised, according to this agreement made by J. Lafarge with S. Packwood, for his security against the incumbrances which were known to exist at the time of purchase? Assuredly the depositaries, the defendants, never intended to take such responsibility on themselves."

We are inclined to think that the law will not and should not impose upon Fuqua and the bank the responsibility with reference to the distribution of papers upon the provisions of a contract it is not shown that he assented to, and declare him a trustee by compulsion for that purpose, based on the circumstances surrounding the parties in this cause.

[3] With reference to the right of recovery by the appellants against Snyder and Irwin, the assignments in reality narrow the issue, we are inclined to think, challenging the action of the court in failing to give a peremptory instruction, or in entering a judgment, in their favor. However, we will treat it, as we treated the other discussion, as a complaint addressed to the action of the court in permitting the verdict and rendering the judgment, which were entered, though, in a sense, they are somewhat distinct matters.

Appellants, in their petition, with reference to the contract pleaded by them as a predicate of recovery against Snyder and Irwin, with reference to the meaning of said agreement, say that: "It was contemplated by said parties at the time of making same that said notes were to be returned and delivered to plaintiffs under the terms and conditions of said written contract, * * * when the McRae suit should terminate without a cancellation of said contract with Collingsworth county." They further plead that "the said suit in the United States Circuit court at Amarillo * * * was finally settled and disposed of by dismissal and without cancellation of said contract, and the said George W. Irwin, Jr., was successful in said suit as contemplated by the parties to said agreement, and the said contract for the purchase of said land did become valid and binding and in full force and effect."

Mr. Hanby, one of the appellants, testified that: "The only trade he and Evants and Irwin and Snyder made as to the terms on which the notes were to be placed in bank was contained in said written contract. The only thing discussed between us as to when the notes were to be delivered was the suit that had been filed against Irwin and Collingsworth county by McRae in federal court at Amarillo. When we purchased the land, in August, from Collingsworth county, McRae was there and claimed to have made a better bid than he did and that he was entitled to the land, * * * and we did not know but what that it (the

contract with Collingsworth county) would be canceled and set aside by said suit (and) that was the only matter discussed by us, and that was the only thing the holding of the notes was for, and it was our agreement that, when that suit was settled, if Irwin kept the land that we were to get those notes."

Mr. Evants testified:· " * * * The day said contract was executed * * * with the notes, that he and Hanby and Irwin and Snyder discussed the matter and agreed on the terms of the sale and purchase of the land, and at that time Albert McRae had filed suit * * * against Collingsworth county and George F. Irwin, Jr., to cancel the contract, * * * and ·it was the understanding and agreement that, if McRae should cancel the said contract, then the notes would not be delivered, but, if the contract was not canceled by said suit, then the notes should be delivered so soon as the suit was settled, * * * that there was no other contingency discussed between them at the time."

Of course, we note the testimony of a demand by Hanby from Fuqua of the notes, and his contention at that time that the dismissal of the suit in the federal court was a fulfillment of the terms of the contract vitalizing the notes and authorizing their delivery. However, we think we are bound by an interpretation of the contract according to the effect of same upon the face of the same, and that the testimony of the appellants, quoted by us as to the mean-' ing of the contract, is not in reality in the face of its textual meaning, interpreting the three provisions reproduced in another part of this opinion. We are unable to inject into the contract that a dismissal of the suit as shown is a compliance of its terms. We think that the fourth, fifth, and sixth paragraphs are in pari materia and should be construed together. The prefatory clause of the contract mentioned the institution of the suit by McRae "seeking to have the above contract of purchase canceled, set aside, and held for naught." We think an adjudication of some matter is clearly the intendment of the instrument. It is true that the fourth clause directs the deposit of the notes in the First National Bank of Hereford "to be there held in escrow, subject to the final termination of the above-mentioned suit"; but the vitalizing element releasing the escrow and creating the notes as real obligations, is the sixth clause, which is to the effect that if Irwin and Collingsworth county are successful in the suit, and the contract is held valid, "then and in that event, upon a final termination of the suit," the said notes shall be delivered to the payees; the fifth clause providing that, if the defendants are . unsuccessful, or should the contract be can-· celed, the said notes should be null and void. The fourth clause only designates the retention of the notes in escrow, subject to the final termination of said suit, and the final termination of the same, permitting the delivery of the notes to the payees, occurs after the contract between Irwin and Collingsworth county has been decreed a valid and binding agreement.

The Supreme Court of the United States, in the case of Haldeman v. United States, 91 U. S. 584, 23 L. Ed. 433, in declaring the effect of federal court judgments dismissing cases by agreement, said: "The general entry of the dismissal of a suit by agreement is evidence of an intention, not to abandon the claim on which it is founded, but to preserve the right to bring a new suit thereon, if it becomes necessary." The same principle was again repeated, and the above cause quoted from by the Supreme Court of the United States, in the case of Jacobs v. Marks, 182 U. S. 585, 21 Sup. Ct. 865, 45 L. Ed. 1246. As to the effect of this federal court judgment dismissing a cause of action, based upon agreement, we are bound by the decisions of the court quoted, and, by virtue of the principle enunciated, the dismissal of the cause, as indicated in this record, did not adjudicate anything. It is true it may be that the parties would have included such a condition, as a dismissal of the cause of action, vitalizing the notes in question, but such a casus omissus we are unable to supply by interpretation, if it were actually omitted. This court would be in the attitude of reforming or reframing a contract without pleadings and without ingredients of accident or mistake for that purpose. We quote from Words and Phrases under the subject of "Final Determination," vol. 3, p. 2798: "In the stipulation providing that proceeds of certain property shall be deposited to await final determination of an action concerning it, the term 'final determination' of the action meant the final settling of the rights of the parties to the action beyond all appeal. Dean v. Marschall, 90 Hun, 335, 35 N. Y. Supp. 724, 726." In turning to the case referred to, the facts are not similar, and there is only a part of the case bearing out the construction by Words and Phrases, but the same is appropriate as the declaration of a principle applicable to this case.

The only difficulty interfering with the conclusion as to the right of appellants in claiming the creation of the liability of Snyder and Irwin is that the federal court order recites that that cause was dismissed upon the agreement of the attorneys of the parties to that suit. The pleading here is simply that the dismissal of the suit is the termination of the same, and a happening of the conditions named in the contract, validating the notes. It may be, in a sense, that with reference to Irwin it does not speak well for him to contend that the condition in the contract has not yet matured, and that the mere dismissal of the suit is not a maturity of said condition, when he contributed to such dismissal; but such a condition and such a

theory was not adduced to the trial court as a predicate for recovery. If Irwin prevented the maturity of the contract and the happening of the condition by not insisting upon the suit or by not forcing a dismissal upon the merits with a judgment concluding something, and by his action violated the terms of the contract he made with Evants and Hanby, they did not frame their recovery upon such a violation, and we must take the pleadings as we find them.

It may be said that we could have found in favor of Fuqua and the bank upon this discussion and conception of appellants' cause of action; however, we preferred a full discussion of all of the matters on account of the importance of the litigation and the rights involved,. and, upon the whole, conclude that the judgment of the trial court should be affirmed, and it is so ordered.