H. H. KING & CO. v. T. G. DAHL and Another.[1]

January 10, 1901.

Nos. 12,386—(171).

## Acceptance of Offer.

A telegram sent in response to a letter containing a proposition to sell two carloads of flour construed. *Held* to be an unequivocal and unconditional acceptance of the offer. The same construction placed on a letter which immediately followed the telegram.

## Written Contract—Parol Evidence of Collateral Agreement.

The rule as to the inadmissibility of parol evidence which tends to vary, alter, or modify a written contract is not infringed by proof of any collateral parol agreement which does not interfere with the terms of the written contract, although it may relate to the same subject-matter.

Action in the district court for Hennepin county against T. G. Dahl and Christ Hagen, co-partners as Dahl & Hagen, to recover $586.87 and interest as damages for breach of a contract of sale, entered into with W. F. Pagel and another, co-partners as Pagel & Carvell. Plaintiff brought action as assignee of the claim. The case was tried before McGee, J., who at the close of plaintiff's testimony granted defendants' motion to dismiss the action. From an order denying a motion for a new trial, plaintiff appealed. Reversed.

*Benton & Molyneaux*, for appellant.

*Wm. A. Lancaster*, for respondents.

COLLINS, J.

Defendants, residents of North Dakota, wrote the following letter to Pagel & Carvell, flour brokers in Minneapolis:

"Hillsboro, N. D., 4–13, 1898.
"Pagel & Carvell, Minneapolis, Minn.:
"Gents: We send you under separate cover sample of our 'Bakers' flour, of which we have two cars for shipment at $3 per barrel in 140 lb. 'jute' sacks, f. o. b. at Minneapolis. This flour is giving the best of satisfaction in the home market, and upon giving it a

1 Reported in 84 N. W. 737.

fair test you will find same to be better than any other flour in the market of the same grade.  *  *  *

"Respectfully,
"Dahl & Hagen."

Immediately on receipt of this letter, the brokers answered by wire as follows:

"Minneapolis, Minn., 4–14, 1898.

"To Dahl & Hagen,
        "Hillsboro, N. D.:
    "Accept your offer for two cars 'Bakers' as per letter.
                                    "Pagel & Carvell."

That afternoon the following letter was written to defendants:

"Minneapolis, Minn., April 14, 1898.

"Messrs. Dahl & Hagen,
        "Hillsboro, N. D.:
    "Gentlemen: We herewith acknowledge receipt of your sample of 'Bakers'; also letter quoting 'Bakers' at $3 per barrel in 140 lb. jute sacks, f. o. b. Minneapolis.   On receipt of same we wired you as follows: 'Accepted your offer of two cars of "Bakers" as per letter,' and herewith confirm purchase of two cars of 'Bakers' in 140 lb. jute sacks, f. o. b. Minneapolis, as per sample sent us. Please send us a baking sample at once; also inform us by return mail if flour is in plain jutes or if jutes are branded, and, if so, what are the sacks branded?  On receipt of same we will send you shipping instructions.  Thanking you for your kind offer, we remain,                                 Yours truly,
                                    "Pagel & Carvell."

    "P. S.: We wire you this p. m.: 'Are sacks branded or plain, and how many sacks?'  If sacks are branded, must be resacked in plain sacks.                                 "Yours,
                                    "Pagel & Carvell."

At the same time Pagel & Carvell wired defendants as follows:

"Minneapolis, 4–14, 1898.

"To Dahl & Hagen,
        "Hillsboro, N. D.:
    "Wire how many sacks 'Bakers.'   Are sacks branded or plain?
                                    "Pagel & Carvell."

On the next day there was a telephone conversation between the parties, in which the number of sacks each car should contain was fixed at two hundred fifty; that the brokers should send to

82 M.—16

defendants five hundred plain jute sacks; that the defendants should resack the flour, keep their own sacks, and be paid at the rate of five cents a barrel for resacking. The next day a letter was written by Pagel & Carvell to defendants, in which was this paragraph:

"We have shipped you to-day 500 jute sacks from H. H. King & Co., whom we have sold the two cars of 'Bakers' purchased from you by us. You to resack the 'Bakers' from our sacks into their sacks, and we will pay you 5c. a barrel for repacking, or $2.95 for your 'Bakers' in bulk, and you keep the sacks as per agreement between you and ourselves to-day over the telephone."

There was also a letter written to defendants on April 19 respecting a large sample, and immediately thereafter they refused to deliver any part of the flour, resacked or otherwise.

This was an action for damages, Pagel & Carvell having sold the flour to the plaintiff, and also having assigned their claim for damages. When the plaintiff rested, the court dismissed the action on the ground that the proposal contained in the first letter from the defendants was not unconditionally accepted by telegram or otherwise; and that the telegram sent in response, as well as the letter, both of date April 14, amounted in law to a rejection of the proposition contained in defendants' letter offering to sell. We are of the opinion that the court below erred when so holding.

According to the contention of defendants' counsel, the concluding words of the telegram, "as per letter," were nothing more than notice that in a letter sent or to be sent by the brokers would be found terms of purchase proposed by the latter. As expressed by counsel in the brief, to consider the words quoted as referring to the letter of offer, is to treat them as surplusage. To consider them "as referring to the letter which must follow, is to give effect to them." To give any such construction to the phrase "as per letter," we should have to wholly ignore and reject the unconditional and unequivocal acceptance of defendants' offer, which preceded it, and which was the gist and vital point of the telegram. Obviously, the brokers referred to the letter containing the offer, which had already been received by them, not to

some letter which they proposed to forward in the future containing their own terms or offer. This is made clearer by an examination of the letter written the same day to defendants in which the proposal was acknowledged, a statement made as to what had been wired, and followed by this language: "And herewith confirm purchase of two cars of 'Bakers' in 140 lb. jute sacks, f. o. b. Minneapolis, as per sample sent us." This acceptance was also unequivocal, unqualified, and incapable of misconstruction. It was a forceful acceptance of the offer contained in defendants' first letter. Nor was there anything in the postscript to indicate that the brokers imposed, as a condition, that the flour must be resacked by defendants, or at their expense. The postscript was merely explanatory of the inquiry by wire as to the sacks.

More than this, both parties considered and treated defendants' offer of April 14 as accepted without condition until there was a change in the flour market, for on April 20 defendants advised the brokers that they had ended all negotiations, because they were unable to obtain a satisfactory commercial rating to warrant the shipment; not because their offer to sell was unaccepted. In cases of this kind it is usually well to abide by the construction placed on correspondence and the legal effect given to it by the parties themselves.

The point is made that the written contract was indefinite, incomplete, and incapable of enforcement, because the exact number of sacks to be loaded in each car had to be ascertained by parol and agreed on. There is nothing in this. The number of sacks which would constitute a car load was easily ascertained and determined.

As part of the case in chief the plaintiff undertook to show the subsequent agreement by telephone, whereby it was verbally stipulated that the defendants should resack the flour in sacks furnished by the brokers, and be paid at the rate of five cents per barrel; that is, twenty-five cents for every seven sacks. The court below ruled this testimony out of the case upon the ground that it tended to vary, alter, and contradict an agreement which, under the statute of frauds, must necessarily be in writing. But the agreement to resack was entirely independent of the written

contract. It did not vary or alter, nor was it inconsistent with, the one required to be in writing. The rule is not infringed by proof of any collateral parol agreement which does not interfere with the terms of the written contract, although it may relate to the same subject-matter. 2 Taylor, Ev. (6th Ed.) § 1049. It was a new, distinct, and independent agreement, not necessary to be in writing; and in no way did it modify, alter, or contradict the original contract in regard to the sale. Where a contract has been reduced to writing, it is competent to prove a subsequent, new, and distinct oral agreement, made upon a new consideration, even though it be in addition to or beyond the written contract. 1 Greenleaf, Ev. (14th Ed.) §§ 302, 303.

The order appealed from is reversed, and a new trial granted.