[No. 4345. Decided July 26, 1904.]

THE MINNESOTA SANDSTONE COMPANY, *Respondent,* v.
F. LEWIS CLARK, *Appellant.*[1]

EVIDENCE—VARYING WRITING BY PAROL—CONTRACTS—LEGALITY
—AGREEMENT AS TO REFUND ON FREIGHT SHIPPED.   Where the purchaser of stone agreed in writing to pay the freight, and alleges an oral agreement whereby the vendor guaranteed that the same should not exceed thirty cents per cwt., agreeing to pay any excess, or to turn over to the purchaser any amount that the railroad company might refund, oral evidence will not be held admissible to vary the terms of the written agreement, as in the case of an illegal contract, on account of the illegality of such refund, where the illegality of the contract was not pleaded, and the evidence touching such illegality was meager, and fails to show any intent to violate the law, except by indulging in forced construction or innuendo.

SAME—CONTRACTS—ILLEGAL PART SEPARABLE.   If such an agreement were illegal, plaintiff could still recover on the balance of the contract, since the consideration is legal and the illegal provision is separable from the rest of the contract.

SAME—CONSTRUCTION OF CONTRACT—ORAL AGREEMENT VARYING TERMS OF WRITING.   Where a written contract of sale provided that the purchaser will pay the freight charges "as agreed upon between you and I, the above price being f. o. b.," parol evidence of an oral agreement that the seller would pay any freight charges in excess of a certain rate is inadmissible, as contradicting the writing.

Appeal from a judgment of the superior court for Spokane county, Richardson, J., entered March 21, 1902, in favor of the plaintiff, by direction of the court upon withdrawing the case from the jury at the close of the evidence, in an action for a balance due for stone sold and delivered. Affirmed.

*Thayer & Belt,* for appellant, to the point that the oral agreement made in this case did not vary or contradict the

1Reported in 77 Pac. 803.

written contract, cited, Jones, Evidence, §§ 444, 445;
Browne, Parol Evidence, § 50; *Ruggles v. Swanwick,* 6
Minn. 526; *King v. Dahl,* 82 Minn. 240, 84 N. W. 737;
*Gibbons v. Rush Co.,* 65 N. Y. Supp. 215; *Mt. Vernon Stone
Co. v. Sheely,* 114 Iowa 313, 86 N. W. 301; *John Hutchison
Mfg. Co. v. Pinch,* 107 Mich. 12, 64 N. W. 729, 66 N. W.
340; *Hines v. Willcox,* 96 Tenn. 148, 33 S. W. 914, 34
L. R. A. 824; *Anderson v. National Surety Co.,* 196 Pa.
St. 288, 46 Atl. 306.

*Moore & Corbett,* for respondents.

Per Curiam.—The Minnesota Sandstone Company,
plaintiff, commenced this action against F. Lewis Clark,
defendant, in the superior court of Spokane county, to re-
cover a balance due said company on a written contract.
Judgment was rendered herein in favor of plaintiff, and
defendant appeals.

Respondent company's cause of action is founded upon
a written contract, executed to it by appellant, which is as
follows:

"September 13, 1900.
"Mr. W. W. Butler, Agent Minnesota Sandstone Co., Spo-
kane, Washington. Dear sir: We accept your proposal
for the sum of five thousand and two hundred and fifty
dollars for the cut stone for the Spokane Club Building, to
be erected at the corner of Washington St. and Riverside
Ave., Spokane, Washington. With the following condi-
tions: The stone is to be the Kettle River Sandstone, from
the quarries of the Minnesota Sandstone Co., at Sandstone,
Minnesota; the stone to be cut, fitted and finished ready
for placing in the wall; the finish to be ten cut, patent ham-
mered face, all stone to be of the best quality and free from
flaws, seams or streaks, and as good as sample submitted
and now on file at this office. The work to be done in ac-
cordance with the plans, specifications, sections and details
prepared by John K. Dow, architect, and such further draw-

ings as may be necessary to illustrate the work to be done, so far as they may be consistent with the original drawings, and to the satisfaction of the architect; the work to be finished and delivered complete on or before the 5th day of October, 1900. We will pay the freight charges, as agreed upon between you and I, the above price being f. o. b. Sandstone, Minnesota. Respectfully yours, John K. Dow, architect.

"The above conditions accepted. W. W. Butler, Agent."

The complaint alleges that respondent furnished and delivered to appellant the aforesaid stone at the agreed price of $5,250, and that appellant has paid respondent, on account of this contract, $4,500, leaving a balance due of $750, for which, with legal interest from January 1, 1901, respondent asks judgment. Appellant in his answer admitted the execution of the contract, but alleged that it comprehended other stipulations pertaining to the payment of the freight on said stone from Sandstone, Minnesota, to Spokane, Washington; alleged that it was agreed, as a part of said contract, that respondent would guarantee that the freight rate, to be charged by the Great Northern R. Co. for transporting said stone from the above point in Minnesota to Spokane, Wash.; should not exceed thirty cents per cwt.; that, "if said railway company should charge, and defendant should pay, more than said rate, then, that plaintiff would refund to defendant any excess that defendant should be obliged to pay said railway company in excess of said rate, and that, if said railway company should refund or rebate any moneys paid by defendant to it in excess of said rate, then that such moneys, so refunded, should belong to defendant and be delivered and paid over by plaintiff to defendant."

The first affirmative defense reiterates this alleged agreement pertaining to the refunding of the excess of freight charges, which were paid by appellant at the rate of eighty-

five cents per cwt., amounting to the sum total of $2,561.90. This defense further alleges that, "thereafter said railway company paid to plaintiff, through its said agent, W. W. Butler, as a rebate on said freight, so as to make the freight charges amount to thirty cents per cwt., the sum of $1,657.70, and said plaintiff received said sum of $1,657.70 from said railway company on or about the 1st day of January, 1901, and still retains and holds the same, but the plaintiff refuses to pay same to defendant, and wrongfully withholds same, although payment thereof has been demanded of it." It is further alleged that appellant was obliged to recut and refit a portion of the stone furnished, at an expense of $121.38. The second affirmative defense alleges that respondent company received from the Great Northern R. Co. the sum of $1,657.70 for the use and benefit of appellant, which it refused to pay over to appellant. Appellant demanded judgment in accordance with the allegations of his said answer. Respondent, by its reply, denies the new matter alleged in the answer, except as to the above credit of $121.38, which it admits.

There is very little dispute between the parties to this controversy with regard to its salient features. There was no showing made in the court below at the trial that respondent ever received from the railway company the rebates alleged on the part of appellant. It appears from the transcript that appellant offered evidence tending to show that respondent guaranteed that the above freight charges on this stone between the above points should not exceed thirty cents per cwt., and that respondent would repay appellant the excess over and above such rate, if he should be compelled to pay the carrier company a greater rate; that appellant was compelled to and did pay the railway company, as freight charges for transporting such

stone, eighty-five cents per cwt. Respondent company objected to the introduction of this evidence on two grounds: (1) that such testimony tended to prove an oral agreement inconsistent, and at variance, with the above written contract; (2) that such oral agreement was in violation of the federal statute commonly known as the interstate commerce law. This evidence was admitted tentatively, but, after all of the evidence was submitted, the trial court discharged the jury, and entered judgment in favor of respondent for the amount claimed in its complaint less the above credit of $121.38. It would seem from the remarks of the trial judge, as noted in the statement of facts, that both of the foregoing objections on the part of respondent were sustained.

The material questions raised on this record, necessary to the proper disposition of this appeal from appellant's standpoint, are presented by the first assignment of error: "The court erred in discharging the jury and ordering judgment for plaintiff." The theory of appellant, as stated in his answer, on which he seeks to maintain his counterclaim, is that respondent had collected certain rebates from the railway company, for which it had refused to account to appellant, in violation of the alleged oral agreement referred to in the written contract with regard to the payment of freight charges. From the testimony adduced at the trial, it would seem that appellant shifted his ground, and undertook to prove an oral guaranty on the part of respondent company, whereby it agreed to refund to appellant the amount of freight charges paid by him for the transportation of this stone over and above the thirty cents per cwt.

The testimony appearing in this record, touching the question of the illegality of this alleged oral contract or

guaranty with reference to these freight charges, is very meager. After giving careful consideration to all the testimony regarding this feature of the transaction, we entertain grave doubts whether it tends to show that there was any intent or sinister purpose, on the part of both, or either, of the parties, to violate the law. It would seem to possess less strength in that behalf than the allegations appearing in the answer of appellant, who denies that such alleged oral agreement was illegal, and contends that it is perfectly consistent with the written contract, and that, if this oral contract were unlawful, and if the appellant could not recover on his counterclaim, the respondent is precluded from maintaining the present action, because the taint of illegality effects the entire contract.

On the other hand, respondent argues, that this written contract is complete in all of its terms; that, therefore, no oral testimony is permissible to vary or add to its provisions, in the absence of allegations of accident, fraud, or mistake; that the law will not presume that parties have entered into the unlawful arrangement upon which appellant bases his claims respecting these freight charges; and that, in any event, the illegal portion of this written contract may be eliminated and disregarded, and the respondent permitted to recover on the remaining provisions of the agreement. There is no question about the correctness of the proposition of law that, notwithstanding the general rule that parol evidence is inadmissible to contradict, vary, or add to a written contract, such rule does not preclude the admissibility of such evidence to show the illegality of a contract or that it was the result of accident, fraud, or mistake. It is also true, as a general rule, that none of these matters can be proven in the absence of pleadings tendering appropriate issues, where the party claiming

relief in that respect has had the opportunity of so plead-
ing, and failed so to do. It is also true that, "Whenever
the illegality appears, whether the evidence comes from
one side or the other, the disclosure is fatal to the case. No
consent of the defendant can neutralize its effect. A stipu-
lation in the most solemn form to waive the objection,
would be tainted with the vice of the original contract, and
void for the same reasons." *Coppell v. Hall*, 7 Wall. 558,
19 L. Ed. 244. See, 6 Rose's Notes on U. S. Rep. p.
1033; *Ah Doon v. Smith*, 25 Or. 89, 34 Pac. 1093; *Samp-
son v. Shaw*, 101 Mass. 145, 3 Am. Rep. 327.

The allegations in appellant's answer, with reference to
this alleged oral agrement respecting freight charges, being
denied by respondent in its reply, we are not inclined to
indulge in any forced construction of the facts, and hold,
from mere innuendo, that there was testimony tending to
show that either of these litigants intended to evade or
violate the law in entering into the alleged arrangement
concerning these freight charges. If, however, we were of
the contrary opinion, we would not be warranted in holding
the entire contract illegal. The illegality would affect only
that portion of the transaction relating to the refunding of
the excess of freight charges. That part relating to the sale
and purchase of this stone is plainly separable from, and
independent of, that part respecting the freight charges,
which brings this feature of the case at bar within the rule
that, where the consideration of an agreement is legal, a
separable illegal provision, free from the imputation of
*malum in se,* may be rejected. *Gelpcke v. City of Du-
buque,* 1 Wall. 221, 17 L. Ed. 519; *Webb v. Allington &
Anderson,* 27 Mo. App. 570.

The last proposition presented for our consideration is
whether the court below erred in deciding that this written

contract is complete in itself, and whether the reception of oral testimony was not permissible to explain the meaning of this provision in the instrument: "We will pay the freight charges, as agreed upon between you and I, the above price being f. o. b. Sandstone, Minnesota." "The rule as to the inadmissibility of parol evidence which tends to vary, alter, or modify a written contract is not infringed by proof of any collateral parol agreement which does not interfere with the terms of the written contract, although it may relate to the same subject-matter." This quotation is taken from the syllabus formulated by the court in the case of *King v. Dahl,* 82 Minn. 240, 84 N. W. 737, and is one of the numerous authorities, to which our attention has been directed by the learned counsel for appellant, bearing on this feature of the transaction. All of appellant's citations in that behalf seem to be of the same general import. If the written contract involved in this controversy were silent on the matter of the payment of freight rates, counsel's contention would be entitled to great. weight. But does this alleged oral contract, on which appellant bases his counterclaim, come within the purview of this rule of law enunciated in the Minnesota case? We think not. This stipulation provides that the appellant was to pay the freight charges for the transportation of this stone, unconditionally—not a portion thereof. The price of the stone was definitely fixed by the terms of the written agreement, "free on board" the cars of the carrier company, at Sandstone, Minnesota. We are of the opinion that, to allow appellant to prove the verbal agreement for which he contends respecting the payment of these transportation charges, in the absence of allegations of accident, fraud, or mistake, would be inconsistent with the express provisions of the written agreement, and in violation of well settled princi-

ples of law, recognized and applied by the courts from time immemorial, relative to the interpretation of written agreements.   The words found in the written instrument, "as agreed upon between you and I," do not add to, or take from, such instrument, in any legal sense, and may be rejected as surplusage.   This language denotes on its face that the payment of the freight charges had theretofore been agreed upon between these parties, and that appellant would pay the same, as agreed upon prior to the execution of the original contract, on which respondent bases its cause of action.   In other words, appellant employs his own language to advise respondent that he will pay the stipulated price for the stone, and also the freight charges thereon from Sandstone to Spokane.   "Of course, if the testimony was for the purpose of contradicting the written instrument or to defeat the operative effect of it, in the absence of fraud, or mistake, it would not be admissible."   *Wright v. Stewart,* 19 Wash. 184, 52 Pac. 1020.   See, further, *Pacific Nat. Bank v. San Francisco Bridge Co.,* 23 Wash. 425, 63 Pac. 207, wherein this court quotes with approval the following language from the opinion in the case of *Eighmie v. Taylor,* 98 N. Y. 288 : "If we may go outside of the instrument to prove that there was a stipulation not contained in it, and so that only part of the contract was put in writing, and then, because of that fact, enforce the oral stipulation, there will be little of value left in the rule itself."   We think that the principle of law embraced in this language applies with full force to the facts presented in the case at bar, and that, if we should hold with appellant and decide that oral testimony should have been received in the trial court in support of his contention above noted, we would, in effect, have to ignore and discredit this salutary proposition of law many times enunciated by this and other courts, and long recognized by jurists.

Testing the facts in the present controversy by the fore-going propositions of law, no reversible error appearing in the record, we are of the opinion that the judgment of the superior court is correct, and must be affirmed.