### In re JOHNSON.

#### Petition of PACIFIC COAST INV. CO.

(District Court, W. D. Washington, S. D.   June 28, 1915.)

#### No. 1250.

1. INTOXICATING LIQUORS ☞327—CHATTEL MORTGAGE—LEGALITY OF CONTRACT—STATUTORY PROVISIONS—"INTEREST."

Rem. & Bal. Code Wash. § 6282, provides that it shall be unlawful for any person or corporation manufacturing or selling intoxicating liquors in quantities of five gallons or more to have any interest in the liquor, stock, fixtures, or equipment of any retail liquor store, or to pay or become surety for the payment for any other person of a license fee. *Held*, not to make it unlawful for an investment company to take a chattel mortgage on the stock, fixtures, etc., of a saloon, since the word "interest" does not include a mortgagee's lien, but refers to a fractional or undivided interest, as the statute, impliedly authorizes a loan by a manufacturer to a retail dealer for any purpose, except the payment of the license fee, and the incidental right to take security for the loan cannot be denied, in the absence of unequivocal language.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. §§ 467–472; Dec. Dig. ☞327.

For other definitions, see Words and Phrases, First and Second Series, Interest.]

**2..Intoxicating Liquors ⬅117—Statutes—Liberal or Strict Construction.**

As Rem. & Bal. Code Wash. § 6282, relative to the ownership of or interest in retail liquor stores by wholesale dealers or manufacturers of liquor, deprives persons of a right of contract previously enjoyed, it should be strictly construed, especially, where it is sought to invoke it to establish a forfeiture, not only as to the lien of a chattel mortgage on things comprising a saloon, but on other things covered by the mortgage and not connected with the saloon in any way.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 127; Dec. Dig. ⬅117.]

**3. Chattel Mortgages ⬅129—Nature of Mortgagee's Interest.**

A chattel mortgagee, not in possession, has no title to the mortgaged chattels, though he has a right or lien which he may preserve against other creditors or grantees by recording.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 216; Dec. Dig. ⬅129.]

**4. Statutes ⬅211—Construction—Reference to Title.**

Where the body of an act is not ambiguous, the title cannot be resorted to for a key to its interpretation, especially as under Const. Wash. art. 2, § 19, providing that no bill shall embrace more than one subject, and that shall be expressed in the title, the title serves its purpose when it aptly includes that which is expressed in the body of the law, and the scope of the body of the act cannot be broadened merely because a broader meaning could be given the words of the title.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 288; Dec. Dig. ⬅211.]

**5. Intoxicating Liquors ⬅327—Illegality—Partial Invalidity.**

Rem. & Bal. Code Wash. § 6282, makes it unlawful for any person or corporation manufacturing or selling intoxicating liquors in quantities of five gallons or more to pay the license fee required by law or ordinance for any retail liquor store. Section 6283 provides that whoever violates any of the provisions of the preceding section shall be guilty of a misdemeanor and shall be fined or imprisoned as therein provided, and that any money loaned in violation thereof shall be forfeited to the city, county, or state. An investment company loaned J. $3,800, of which $800 was for the purchase of the unexpired portion of a liquor license, and $3,000 for the purchase of the licensee's saloon, hotel, furniture, and business. A separate check was drawn for the $800, and separate notes were given therefor; all the notes being secured by a chattel mortgage on the furniture, fixtures, and stock of merchandise. *Held* that, even though there was a loan of the license fee, the contract was severable, and the notes given for the furniture, equipment, etc., and the mortgage securing them, were valid.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. §§ 467–472; Dec. Dig. ⬅327.]

**6. Bankruptcy ⬅311—Claims—Disallowance Until Surrender of Preference.**

A claim by a chattel mortgagee to the proceeds of a sale of mortgaged property is not such a claim as will be disallowed until the surrender of an illegal preference under Bankr. Act July 1, 1898, c. 541, § 57g, 30 Stat. 560, as amended by Act Feb. 5, 1903, c. 487, § 12, 32 Stat. 799 (Comp. St. 1913, § 9641), providing that the claims of creditors, who have received voidable preferences, shall not be allowed, unless they shall surrender such preferences.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 497–500; Dec. Dig. ⬅311.]

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

7. BANKRUPTCY ☞267—SALE OF MORTGAGED PROPERTY—LIABILITY FOR EXPENSES.

A chattel mortgagee ratifying a sale by the mortgagor's trustee in bankruptcy, by petitioning for the proceeds thereof, is liable for the expense attendant thereon, including rent of the premises, where the mortgaged property was kept after the appointment of the trustee, and while the receiver was in possession, but is not liable for any other charges or expenses, nor any attorney's fees incurred by the receiver or trustee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 371, 380; Dec. Dig. ☞267.]

In Bankruptcy. In the matter of A. L. Johnson, bankrupt. On petition by the Pacific Coast Investment Company for the proceeds of mortgaged property. Referee's order, holding the mortgage invalid, disapproved.

Troy & Sturdevant, of Olympia, Wash., for petitioner. A. Emerson Cross and T. H. McKay, both of Aberdeen, Wash., for trustee.

CUSHMAN, District Judge. The bankrupt, prior to bankruptcy, was engaged in the hotel and retail liquor business. Petition for adjudication in bankruptcy was filed December 24, 1912. Eleven months prior thereto the bankrupt, in order to purchase the saloon, hotel furniture, and business, and secure the unexpired portion of the seller's liquor license, borrowed $3,800 from the Pacific Coast Investment Company, for which notes were given, payable monthly, for $100 each. These notes were secured by a mortgage on chattels, including the hotel and saloon furniture and fixtures and the merchandise stock.

The trustee petitioned for the sale of the personal property of the bankrupt, on which the Pacific Coast Investment Company held this mortgage. That company appeared and objected to the sale, setting up that the property offered for sale was covered by its mortgage, executed in good faith more than four months prior to the adjudication, and that it was a good and subsisting lien. The referee overruled the objection of the petitioner and sold the property for $2,100. Whereupon the petitioner filed its petition for the distribution of the funds realized to itself. To this petition, the trustee filed an answer admitting the mortgage and alleging that it was invalid for the reason that, while it was made in the name of the Pacific Coast Investment Company, it was, in reality, a transaction wherein the Olympia Brewing Company advanced the money and received the mortgage; that, in part, it was secured upon, and given for the purchase of, the license, liquors, and saloon of the bankrupt, in violation of the laws of Washington.

An amended answer was filed for the trustee, alleging, further, a subsequent transaction, whereby the bankrupt, within four months prior to bankruptcy, surrendered to petitioner the bankrupt's liquor license, alleged to be of the value of $666.65, and that it received such amount therefor, whereby petitioner gained an illegal preference. The referee, after taking testimony, held the mortgage invalid.

[1] If it be concluded that the relation between the petitioning company and the Olympia Brewing Company was sufficiently close to warrant a finding that what was done in this matter by the Pacific Coast

Investment Company was virtually the action of the Olympia Brewing Company, the question still remains as to the legality of the mortgage in question.

The Washington statute provides:

"Section 1. That from and after the 31st day of December, 1909, it shall be unlawful for any person, persons, firm or corporation engaged in the manufacture, rectifying or bottling of spirituous, fermented malt or other intoxicating liquors or engaged in buying, selling or disposing of the same in quantities of five gallons or more to own all or any part of or to have any interest in the liquor, stock, fixtures or equipment of any kind whatsoever of any retail liquor store or to pay, advance or loan or become surety for the payment for any other person of the license fee required by any state law or city charter or ordinance, or to hire, engage or employ, directly or indirectly, any person, persons, firm or corporation to manage, conduct, control or operate a place where intoxicating liquors are sold at retail, to wit, in less than five gallons at a time or to sign or become surety on any bond required by law of a retail liquor dealer." Section 6282, Rem. & Bal.; title 267, § 97, Pierce's Code 1912.

The referee concludes that a manufacturer of intoxicating liquors is forbidden by this statute to take a mortgage upon a retail liquor store, and in effect holds that such a mortgage would be an "interest" in such liquor store, within the meaning of this statute.

[2] This law deprives persons of a right of contract theretofore at all times enjoyed under the law and, in the present cause, is being invoked for the purpose of establishing a forfeiture, not only as to the lien of the mortgage upon those things comprising the saloon, but also those not connected with it in any way. It should therefore be strictly construed.

It will not be presumed that the Legislature intended to deprive one engaged in an authorized business of such rights, in the absence of unequivocal language. Before the contract, or any part of it, can be held illegal, it must be clearly within the prohibition of the letter and spirit of the statute, and, if there is a fair doubt as to whether it is embraced within such prohibition, the doubt will be resolved in favor of the petitioning mortgagee. 36 Cyc. 1178 to 1188.

The law denies a liquor manufacturer the right to "own all or any part or to have any interest in the liquor, stock, fixtures or equipment of any kind whatsoever of any retail liquor store." The words "have any interest," as used here, have the same meaning as "own any interest." If they are given a broader meaning, the words "own all or any part" are wholly superfluous, for a man who owns "all or a part" of a thing certainly has an interest in that thing. The words "any part," as used in this act, were liable to be misunderstood and taken as meaning, for example, a case where one man owned the fixtures and equipment of a saloon and another owned the liquor. Hence the words "or to have any interest in" were inserted to deny the manufacturer the right to have or own a fractional or undivided interest in a retail liquor store, its liquor stock, fixtures, or equipment.

The statute also forbids the manufacturer loaning or becoming surety "for the payment for any other person of the license fee required by any state law" for a retail liquor store. The statute, by denying the manufacturer the right to make a loan for this purpose, impliedly authorizes a loan by the manufacturer to a retail dealer for any other pur-

pose. This under the familiar maxim, "Expressio unius est exclusio alterius." This right to loan carries with it the right to take security upon any and all property, because such right is incidental to the right to loan, which right cannot be denied, in the absence of unequivocal language to that effect.

By this construction only can all the words of the statute be given effect. The Legislature is presumed not to have used unnecessary words in expressing its meaning. If the word "interest," as used, is broad enough to include a mortgagee's lien, it is broad enough to include the right of one who "owns all or any part," and the Legislature is thereby convicted of using useless and unnecessary words in the statute.

Ownership of any article affords a different control and warrants the anticipation of a different result than that to be expected from a mortgagee's lien. The influence and control of the mortgagee over the mortgaged property and its use would depend largely, if not entirely, upon the solvency of the mortgagor, which would not be the case with an owner.

Whether the purpose on the part of the Legislature in enacting this statute was to prevent a manufacturer of intoxicating liquors from controlling saloons, or to discourage their activity in starting saloons, as the words used in the statute are confined to a denial of right of ownership in the saloon, there is no reason to strain the words used to include something else, because deemed capable of producing a somewhat similar result to that presumed to arise from the admittedly condemned act. Johnson v. So. Pac., 117 Fed. 462, 54 C. C. A. 508; Id., 196 U. S. 1, 25 Sup. Ct. 158, 49 L. Ed. 363; Field v. U. S., 137 Fed. 6; 69 C. C. A. 568; Erbaugh v. U. S., 173 Fed. 433, 97 C. C. A. 663; St. Louis Merchants' Bridge Termin. Ry. v. U. S., 188 Fed. 191, 110 C. C. A. 63.

Even though this statute imposed a penalty and is invoked to justify a forfeiture, the court would have no right to disregard the obvious intent of the Legislature; but no obvious intent is manifest to include, by the word "interest," a mortgagee's lien.

[3] A chattel mortgagee, not in possession, has no title to the mortgaged chattels, although he has a right or lien, which he may preserve against other creditors or grantees by recording. Silsby v. Aldridge, 1 Wash. 117, 23 Pac. 836; Binnian v. Baker, 6 Wash. 50, 32 Pac. 1008; Sayward v. Nunan, 6 Wash. 87, 32 Pac. 1022; First Nat. Bk. v. Hagan, 16 Wash. 45, 47 Pac. 223.

In Ormsby v. Ottman, 85 Fed. 492, 29 C. C. A. 295, Judge Sanborn writing the opinion, where a statute authorizing service by publication in suits to quiet title was involved, the language of the statute being "adverse estate or interest," it was held that the word "interest" would include a mortgagee's lien, and that the mortgagee might be served by publication. The court apparently concedes that generally the word "interest" means an estate, but, in the statutes before it for consideration, held (partly in view of the statutes in pari materia and upon consideration of the very object of a suit to quiet title) that the word "interest" included the claim of a mortgagee. Ordinarily an interest would

mean an estate, but its being coupled in the disjunctive with the word "estate" would tend to show that it was used in another sense. One of the statutes before the court in that case, held to be in pari materia with the one in question, provided for service by publication "when any defendant has or claims a lien or interest."

The Washington statute in the present case is not one of procedure. It takes away a right of contract and is invoked to justify a forfeiture, and the interpretation is rather to be controlled by the rule adopted in the following cases, in which it has been held that the word "interest" does not include or describe a mortgagee's lien. Williams v. Santa Clara Min. Ass'n, 66 Cal. 193, 5 Pac. 85–91; Adams v. Colonial & U. S. Mortg. Co., 82 Miss. 263, 34 South. 482, 488, 17 L. R. A. (N. S.) 138, 100 Am. St. Rep. 633; Garrett v. Fernauld, 63 Fla. 434, 57 South. 671; Sterns-Rogers Mfg. Co. v. Aztec Gold Min. & Mill. Co., 14 N. M. 300, 93 Pac. 706; Alexander v. Cleland, 13 N. M. 524, 86 Pac. 425; Morrison v. Clarksburg Coal & Coke Co., 52 W. Va. 331, 43 S. E. 102, 106.

The title to the act in question is:

"An act to prohibit any manufacturer of or wholesale dealer in intoxicating liquor from owning, operating or having any financial interest in any saloon or other retail liquor store or in any retail liquor license in the state of Washington or to become surety on any liquor dealer's bond and providing penalties for violation thereof." Laws 1909, p. 182.

[4] As long as the body of the act is not ambiguous, there is no reason to resort to its title for a key to its interpretation. The Constitution of the state of Washington provides:

"No bill shall embrace more than one subject, and that shall be expressed in the title." Article 2, § 19.

Under such provision, the title to an act should be as broad or broader than the body of the act, and, if the title aptly includes that which is expressed in the body of the law, it has served its purpose, and the broadening of the scope of the body of the act in violation of its terms would not be warranted merely because a broader meaning could be given the words of the title. 36 Cyc. 1133.

[5] Of the $3,800 secured by the mortgage, $800 was loaned to the bankrupt to buy the unexpired portion of a liquor license. Considering this as the loan "of the license fee" prohibited by statute, does it require the rejection of petitioner's claim to the proceeds of the sale of the mortgaged property?

The second section of the act provides:

"Whoever violates any of the provisions of section 1 of this act shall be deemed guilty of a misdemeanor and for the first offense shall be fined in any sum not less than one hundred (100) dollars nor more than five hundred (500) dollars or to be imprisoned in the county jail for not less than thirty (30) days nor more than six (6) months and any money paid, advanced or loaned in violation of this act, for any license, by any such person, persons, firm or corporation mentioned in section one (1) of this act shall be forfeited to the city, county or state, as the case may be." Rem. & Bal. § 6283; Pierce's Code 1912, tit. 267, § 99.

The thing prohibited not being malum in se, and one strict penalty being imposed by the act expressly, the greater weight of authority

in the national courts, applying the rule of "expressio unius est exclusio alterius," is that no legislative intent is shown to invalidate such a contract as that here in question.

"There is another equally well-settled rule of law, so far as the national courts are concerned. When a statute imposes specific penalties for its violation, where the act is not malum in se, and the purpose of the statute can be accomplished without declaring contracts in violation thereof illegal, the inference is that it was not the intention of the lawmakers to render such contracts illegal and unenforceable. Harris v. Runnels, 12 How. 79, 13 L. Ed. 901; Farmers', etc., Nat. Bank v. Dearing, 91 U. S. 29, 23 L. Ed. 196; National Bank v. Matthews, 98 U. S. 621, 25 L. Ed. 188; Barnet v. National Bank, 98 U. S. 555, 25 L. Ed. 212; Louisiana v. Wood, 102 U. S. 294, 298, 26 L. Ed. 153; Fritts v. Palmer, 132 U. S. 282, 289, 293, 10 Sup. Ct. 93; 33 L. Ed. 317; Central Transportation Co. v. Pullman Co., 139 U. S. 24, 60, 11 Sup. Ct. 478, 35 L. Ed. 55; Logan County Bank v. Townsend, 139 U. S. 67, 11 Sup. Ct. 496, 35 L. Ed. 107; Merchants' Cotton Press Co. v. Insurance Co., 151 U. S. 368, 388, 14 Sup. Ct. 367, 38 L. Ed. 195; Pullman Co. v. Central Transportation Co., 171 U. S. 138, 18 Sup. Ct. 808, 43 L. Ed. 108; Connely v. Union Sewer Pipe Co., 184 U. S. 540, 545, 22 Sup. Ct. 431, 46 L. Ed. 679; Yates v. Jones National Bank, 206 U. S. 158, 179, 27 Sup. Ct. 638, 51 L. Ed. 1002; Hanover National Bank v. First National Bank, 109 Fed. 421, 426, 48 C. C. A. 482, 487; Dunlop v. Mercer, supra; Boatmen's Bank v. Fritzlen (C. C.) 175 Fed. 183." In re T. H. Bunch Co. (D. C.) 180 Fed. 519, at 527.

Before determining whether the foregoing rule is controlling in the present case, inquiry should first be had as to whether the contracts secured by the mortgage are several, and, if so, whether the tainted portions can be rejected, and yet leave sufficient of petitioner's claim unsatisfied to cover the amount realized from the sale.

A separate check was drawn to the bankrupt for $800 and another for $3,000. All of the testimony, both that for the petitioner and that of the witnesses produced by the trustee, is to the effect that the $800 was for the purchase of the license, and that the first eight notes of $100 maturing were for the payment of this part of the money loaned, and that each of these notes was paid long prior to bankruptcy. This is likewise corroborated by the manner in which the account was kept in petitioner's books.

. Under this state of facts, the contract is clearly severable, and that portion of the notes given for the purchase of the hotel, store, liquors, and equipment and the mortgage securing the same are valid. Gelpcke v. City of Dubuque, 68 U. S. (1 Wall.) 221, 17 L. Ed. 519; Borland v. Prindle, Weeden & Co. (C. C.) 144 Fed. 713; U. S. Consol. S. R. Co. v. Griffin, etc., Co., 126 Fed. 364, 61 C. C. A. 334 (C. C. A. 9th Cir.); Glucose Sugar Refin. Co. v. City of Marshalltown (C. C.) 153 Fed. 620; Minn. Sandstone Co. v. Clark, 35 Wash. 466, 77 Pac. 803; McDonald v. Neilson, 2 Cow. (N. Y.) 139, 14 Am. Dec. 431, 436; 27 Cyc. 1130g; 15 Am. & Eng. Encyc. Law, 990 (2d Ed.). The foregoing rule is applicable to a mortgage where part of that secured by it is valid and part secured is invalid. U. S. v. Bradley, 35 U. S. 343, at 360, 9 L. Ed. 448; Corbett v. Woodward, Fed. Cas. No. 3,223; In re Stowe, Fed. Cas. No. 13,513; Mills v. Hudmon & Co., 175 Ala. 448, 57 South. 739; First Nat. Bank v. Ashmead, 33 Fla. 416, 14 South. 886. It has been held that an illegal contract, which, at its inception, was entire, may still be severed in its performance and part of it legalized thereby. Fore-

man v. Ahl, 55 Pa. 325; 15 Am. & Eng. Encyc. Law (2d Ed.) 991, note D.

Hazelton v. Sheckells, 202 U. S. 71, 78, 26 Sup. Ct. 567, 50 L. Ed. 939, 6 Ann. Cas. 217; Miller v. Ammon, 145 U. S. 421–427, 12 Sup. Ct. 884, 36 L. Ed. 759; Gibbs v. Baltimore Gas Co., 130 U. S. 396, 9 Sup. Ct. 553, 32 L. Ed. 979; Grover v. Zook, 44 Wash. 489,. at 501, 87 Pac. 638, 7 L. R. A. (N. S.) 582, 120 Am. St. Rep. 1012, 12 Ann. Cas. 192; Horseman v. Horseman, 43 Or. 83, 72 Pac. 698; Potter v. Potter, 43 Or. 149, 72 Pac. 702—have been cited. These were all cases where the contract in question was not severable; where there was no measure by which to gauge the illegal part of the consideration as against that which was undertaken to be performed. The distinction between such a contract and one such as is here involved is plainly indicated in the last two cases, in one of which the opinion was written by Judge Wolverton and in the other by Judge Bean.

It has been held "where the consideration of a contract consists of several different elements, and no apportionment or separate valuation, or means of apportionment or valuation of the different elements of the consideration is made by the parties," that "the entire contract will be held illegal, if one of the elements of the consideration is immoral or, against public policy." 15 Am. & Eng. Encyc. of Law (2d Ed.) 989, note 1. In the present case the means of appraisement and valuation of the consideration is made by the parties, for dollars were borrowed and dollars were promised in return. They are themselves a measure of value. Having reached this conclusion, it is not necessary to determine whether the Pacific Coast Investment Company and the Olympia Brewing Company should be held identical.

[6] The conclusion reached is not affected by the fact that subsequently, in another transaction, the bankrupt surrendered to the petitioner another liquor license certificate with his right thereto and for which petitioner had loaned him the license fee, and that the petitioner has disposed of the same for $666.65, which it refuses to surrender to the trustee.

The right asserted by the petitioner to the proceeds of the sale of the mortgaged property (a right to a res) is not such a claim as, under section 57g of the Bankruptcy Act, as amended, will be disallowed until the surrender of an illegal preference obtained. Even were it considered as an ordinary claim, not arising out of an entirely separate transaction, the greater weight of authority is against its disallowance. Collier on Bankruptcy (10th Ed.) 733, notes 160, 161.

[7] The petitioner, having ratified the sale made by the trustee by petitioning for the proceeds of the sale, is held liable for the expense attendant thereon, including the rent for the premises, where the mortgaged chattels were kept after the appointment of the trustee, and also while the receiver was in possession. But the petitioner is not required to pay any other charges or expenses, nor any attorneys' fees incurred by the receiver or trustee. In re J. H. Alison Lbr. Co. (D. C.) 137 Fed. 643.

The referee's order is disapproved.